Harriette McADOO

v.

John S. TOLL, et al.

Civ. No. Y–82–1770.

United States District Court,
D. Maryland.

Aug. 19, 1985.

Roma J. Stewart, Chicago, Ill., and Samuel Hamilton, Silver Spring, Md., for plaintiff.

Stephen H. Sachs, Atty. Gen. for the State of Md., Baltimore, Md., Frederick G. Savage, Asst. Atty. Gen., Baltimore, Md., and Susan J. Mathias, Asst. Atty. Gen., Baltimore, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

### I. BACKGROUND

This case involves a claim of racial discrimination in employment. The plaintiff, Dr. Harriette McAdoo originally brought this action against the University of Maryland, its President Dr. John S. Toll, and other officials of the University pursuant to 42 U.S.C. § 1981. Plaintiff subsequently amended her complaint to include claims under 42 U.S.C. §§ 1983 and 2000e et seq. (Title VII).

According to the amended complaint, Dr. McAdoo, a black female, alleges she was wrongfully denied a position as a full professor in the University's College of Human Ecology because of race after having applied and been considered for an appointment in the Department of Family and Community Development. Plaintiff alleges that she received a unanimous recommendation from the search committee and subsequently an oral offer of employment before eventually being rejected for a full professorship. Plaintiff later learned that a white female who had just received her Ph.D. degree was appointed to a position in the department as an assistant professor. She alleges that the Department of Family

and Community Development has never had a full black professor and that the department has never before rejected an applicant unanimously recommended by the search committee.

## II. PROCEDURAL HISTORY

This case is marked by a somewhat sporadic procedural history. Plaintiff originally brought suit under 42 U.S.C. § 1981 after her formal rejection by the University. She also filed a complaint under Title VII with the Equal Employment Opportunity Commission ("EEOC") in August, 1980, some two months after having been formally notified of her rejection by John R. Beaton, Dean of the College of Human Ecology. The EEOC investigated the complaint and found reasonable cause to believe plaintiff's charge to be true in September, 1981. Plaintiff instituted this action for damages, injunctive and declaratory relief in June 1982, and amended her complaint in August, 1982 following the issuance of a right to sue notice by the Attorney General. Thereafter, defendants moved to dismiss the amended complaint, and in the alternative, moved for summary judgment.

Plaintiff's amended complaint includes her original claims under § 1981 as well as new claims under § 1983 and Title VII. It names as defendants: the University of Maryland; John S. Toll, President of the University; Robert Gluckstern, Chancellor of the College Park Campus; William Kirwan, Vice Chanceller for Academic Affairs at the College Park Campus; George P. Funaro, Provost of the Division of Human and Community Resources; John R. Beaton, Dean of the College of Human Ecology; and William J. Hanna, Chairman of the Department of Family and Community Development.

On August 7, 1984, this Court denied defendants' motion to dismiss plaintiff's Title VII claims holding that these claims could be maintained against all defendants. *McAdoo v. Toll,* 591 F.Supp. 1399, 1404 (D.Md.1984) (Young, J.). However, the Court also held that monetary damages were not recoverable under §§ 1981 and 1983 and dismissed the claims brought pursuant to these sections against defendants Toll, Gluckstern, and Kirwan. *Id.,* at 1404–05. The import of the Court's opinion was that, if successful, plaintiff would only be entitled to recover back pay and reinstatment, less her interim or potential earnings.

## III. APPLICABLE LAW

### TITLE VII

■ This case involves a claim of disparate treatment on account of race. Disparate treatment cases naturally involve intentional discrimination and therefore intent is an inherent element in any cognizable disparate treatment claim under Title VII. *See Allen v. Prince George's County, Maryland,* 538 F.Supp. 833, 848 (D.Md. 1982). Such cases require that a Title VII plaintiff initially establish a *prima facie* case of discrimination by satisfying the four requisites enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), except where discrimination can be proven by direct evidence. *E.g., Bell v. Birmingham,* 715 F.2d 1552, 1556–57 (11th Cir.1983) (manager's statement that he would not allow plaintiff to work in the washroom because if he did "every woman would want to" was direct evidence of discrimination which made *McDonnell Douglas* analysis unnecessary); *Lee v. Russell County Board of Education,* 684 F.2d 769, 774–75 (11th Cir.1982) (testimony that employment actions taken by administration were racially motivated was direct evidence of discrimination).

■ To prevail under the three step analysis in *McDonnell Douglas,* the plaintiff must first establish: (1) that she is a member of a protected group; (2) that she applied for a job for which she was qualified; (3) that she was rejected; and (4) that the employer continued to seek applicants. *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. at 1824–25. The burden then shifts to the employer to articulate some legitimate non-discriminatory reason for rejecting the plaintiff. Thereafter, the plaintiff may show that the reason offered by the defendant is merely a "pretext" for what

actually was intentional discrimination. *Id.* Resolving the issue of pretext involves an often dispositive inquiry into whether defendant's non-discriminatory reason is the real reason for the plaintiff's treatment or whether it is in fact being offered to cover-up or to obscure racial discrimination. Defendant's non-discriminatory reason for taking it's action need not be important or sound; it need only be the true reason. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981). However, unsound or marginal reasons may be viewed skeptically by the finder of fact when deciding the issue of pretext. Once the plaintiff has satisfied his or her burden of proving pretext, plaintiff is entitled to prevail on the merits unless the defendant can show by clear and convincing evidence that an applicant other than the plaintiff would have been selected for reasons other than prohibited discrimination if the discrimination had not occurred. *See Patterson v. Greenwood School District 50*, 696 F.2d 293, 295–96 (4th Cir. 1982). Otherwise, the burden of persuasion ultimately is on the plaintiff to establish his or her case by a preponderance of the evidence. *Chisholm v. United States Postal Service*, 665 F.2d 482 (4th Cir.1981).

SECTION 1981

■ Title 42 U.S.C. § 1981 protects persons from racially motivated deprivations of various enumerated rights, including the right to be free from racial discrimination in employment. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975); *Allen*, 538 F.Supp. at 856 (D.Md. 1982). This section requires proof of discriminatory motive and intent in order for a plaintiff to recover, *Gay v. Waiters' and Dairy Lunchmen's Union*, 694 F.2d 531, 536 (9th Cir.1982); *Robertson v. Maryland State Department of Personnel*, 481 F.Supp. 108, 112 (D.Md.1978), *aff'd per curiam*, 615 F.2d 1357 (4th Cir.1979), as it reaches only purposeful discrimination. *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 389, 102 S.Ct. 3141, 3149, 73 L.Ed.2d 835 (1982).

Thus, a plaintiff must prove that the deprivation at issue was intentional and motivated by racial animus in order to be entitled to relief under § 1981.

■ The prior discussion concerning plaintiff's establishment of a *prima facie* case under Title VII is applicable to an analysis of discrimination claims under § 1981. *Allen*, 538 F.Supp. at 856. Given the similarities of the two statutes, it is appropriate to apply the *McDonnell Douglas* test to § 1981 claims. *Gay*, 694 F.2d at 539. "[T]he evidence establishing a *prima facie* case under the former statute (Title VII) suffices to establish a *prima facie* case under the latter (§ 1981)." *Scarlett v. Seaboard Coastline R. Co.*, 676 F.2d 1043 (5th Cir.1982) (citing *Baldwin v. Birmingham Board of Education*, 648 F.2d 950, 954–55 (5th Cir.1981); *see Allen*, 538 F.Supp. at 856. Title VII and § 1981 are overlapping, but independent, remedies for racial discrimination in employment. *Johnson*, 421 U.S. at 461, 95 S.Ct. at 1720. In short, a *prima facie* case under § 1981, like a *prima facie* disparate treatment case under Title VII, requires proof of intentional discrimination and the focus of the judicial inquiry is whether the plaintiff has proven, by a preponderance of evidence, facts from which the Court must infer, absent rebuttal, that the defendant was motivated by discriminatory animus.

> Under both statutes, the court must make a sensitive inquiry into the direct and circumstantial evidence of discrimination offered by the plaintiff in order to determine if the facts so proved allow § 1981 claimants to avail themselves of Title VII discriminatory treatment standards in proving a prima facie case.

*Gay*, 694 F.2d at 538 (citing *Hudson v. IBM Corp.*, 620 F.2d 351, 354 (2d Cir.), *cert. denied*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980)).

The applicability of the *McDonnell Douglas* standards beyond the *prima facie* case in a § 1981 disparate treatment claim is unclear and often not reached. *See, e.g., Gay*, 694 F.2d at 539 (court refused to hold that *Burdine* and *McDonnell Douglas* had

to be followed in all aspects of § 1981 cases because a plaintiff's burden could differ in some respects but the court did not address the issue). Nonetheless, the two statutes are substantially similar and the Court will not apply divergent elements of proof or different standards for evaluating Title VII and § 1981 claims absent some significant dissimilarity in the purposes behind the invocation of the relevant statutes. Thus, the previous discussion of claims asserted under Title VII is applicable to plaintiff's § 1981 claims. *Allen,* 538 F.Supp. at 857.

SECTION 1983

■■■ Plaintiff also seeks relief pursuant to 42 U.S.C. § 1983 for defendants' refusal to appoint her to a position as full professor. Section 1983 provides a remedy for state action that purposefully discriminates on the basis of race in violation of the equal protection clause of the Fourteenth Amendment. *See, e.g., Flores v. Pierce,* 617 F.2d 1386, 1388 (9th Cir.1980). The protection afforded by § 1983 includes relief from discriminatory employment practices of public employees. *See Whiting v. Jackson State University,* 616 F.2d 116, 121–22 (5th Cir.1980). Furthermore, the right to equal protection with regard to public employment does not depend on the existence of a property interest in that employment. *Poolaw v. City of Anadarko,* 660 F.2d 459, 462 (10th Cir.1981).

■■■ Allegations of discriminatory employment practices which are sufficient to support a claim for relief under 42 U.S.C. § 1981 are also sufficient to support a claim under § 1983. *Id.* at 462. Insofar as it is used as a parallel remedy for transgression of § 1981 and Title VII rights, the basic elements of the causes of action do not differ appreciably from those discussed above, *Whiting,* 616 F.2d at 121, except that liability under § 1983 is conditioned on a showing of some personal involvement or participation in the denial of civil rights. *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, supervisory liability cannot automatically be ruled out in a § 1983 action. A supervisor or supervising body may be held liable under § 1983 for failure to adequately supervise or control, *Fisher v. Washington Metropolitan Area Transit Authority,* 690 F.2d 1133, 1143 (4th Cir.1982), or where the supervising defendant is responsible for a policy or custom which results in the deprivation of rights. *Wellington v. Daniels,* 717 F.2d 932, 935 (4th Cir. 1983).

IV. PLAINTIFF'S DISPARATE TREATMENT CLAIMS

Under the *McDonnell Douglas* test as applied to the facts of this case, plaintiff has met her initial burden of establishing the essential elements of *McDonnell Douglas*—she is a black female; she was qualified and was seriously considered for the available professorship; she was not hired by the University in 1980 or anytime thereafter; and the University continued to seek applicants after her rejection. Defendants have offered three legal, non-discriminatory reasons for denying plaintiff an appointment as a full professor at the University and plaintiff has argued and presented evidence intended to show that defendant's articulated reasons for rejecting her are a mere pretext for what she alleges was racial discrimination.

This case, like many disparate impact cases, turns on the issue of pretext. The Court finds on the basis of the record that the plaintiff has not met her burden of proving pretext by a preponderance of the evidence. Defendants have argued throughout this litigation that plaintiff McAdoo was denied a faculty appointment because: (1) she did not submit recommendations from full professors unassociated with the University of Maryland; (2) her record of publications was determined to be "qualitatively and quantitatively limited;" and (3) she did not receive the unqualified approval of the full professors within the University's Department of Family and Community Development.

■■■ The Court finds that these were the reasons the plaintiff was denied an appointment. However, the Court does not join in the defendants' ultimate assessment

of Dr. McAdoo's qualifications nor does it seek through this decision to legitimate or condone the process by which defendants reached their decision to reject the plaintiff's application. Although marginal reasons offered to justify defendants' actions may be probative with regard to the issue of pretext, defendants' reasons for their actions need not be important or sound; they only need be the true reasons. *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1095. The Court may not find for the plaintiff simply because it regards the defendants' reasons as unsound; nor can the Court substitute its judgment for that of the defendants. It must limit its review to determining whether defendants' stated reasons for taking action adverse to the plaintiff are the real reasons for such action.

■ After a review of the record, the Court finds that the plaintiff has failed to show by a preponderance of evidence that defendants' refusal to appoint her to the faculty was motivated by racial animus, and therefore, she is not entitled to recovery. *Chisholm v. United States Postal Service,* 665 F.2d 482 (4th Cir.1981). There is sufficient evidence in the record to support this determination. The record is replete with memoranda in which various defendants express a need to both attract and retain highly qualified minority scholars to improve the quality and image of the University. Defendants' testimony also corroborated these concerns.

The undisputed testimony of several witnesses for the defendants *and* plaintiff indicate that there was a particularly heavy emphasis placed on the publication records of applicants for full professorships in hiring and promotion decisions following President Toll's expression of his intention to make the University of Maryland one of the country's premier public universities. The record reflects that the faculty in general, and those evaluating candidates for promotion and appointment in particular, were especially conscious of this increased emphasis on publications. Search committee members and other decision makers in the appointment process were also cognizant of the fact that candidates were to be evaluated and considered in light of the standards applicable in the top ten departments in the candidate's particular field at the country's leading public universities.

Defendants' witnesses expressed near unanimous concern regarding the quantity of the plaintiff's publications in scholarly books and journals. Defendants' expert witness in the field of qualifications, Dr. Ruth Young, the former Acting Vice President for Academic Affairs and current Dean of the University of Maryland School of Social Work testified that Dr. McAdoo's publication record at the time she was considered for a faculty position was not sufficient to qualify for a full professorship under the more stringent, albeit imprecise standards initiated by President Toll. Ironically, Dr. Young, among others, admitted in her testimony that she would not have qualified for an appointment as a full professor had the standards by which Dr. McAdoo's publications record was judged been in effect at the time of her own candidacy. However, Dean Young also noted that many applicants for full professorships at the University have been rejected on the basis of their publication records since the University began heavily emphasizing candidates' "scholarly output" in appointment decisions.

The record also reveals that the plaintiff ultimately failed to receive the unqualified recommendation of the full professors in the Family and Community Development Department, a requisite for the approval of any candidate for appointment as a full professor. Professor Remie Clignet, a full professor in the department gave the plaintiff a decidedly negative evaluation. Professor Ned Gaylin, another full professor in the department, ultimately was unable to give Dr. McAdoo an unqualified recommendation. Professor Clignet expressed a concern about the plaintiff's scholarly status in light of her publications record while Professor Gaylin indicated that he had some reservations about the plaintiff's "methodolical strength." Finally, Dr. William Hanna, Chairman of the Family and Community Development Department, testified that he found the plaintiff's publication record to be "very thin." Defendant

Hanna also testified that Dr. McAdoo's strengths did not coincide with the department's more pressing needs; the plaintiff's strength was in the area of family studies and the department's greatest need was in the area of social policy analysis. Nonetheless, Professors Hanna and Gaylin both indicated in their testimony that they would have looked more favorably upon the plaintiff's candidacy had Professor Hanna been successful in securing additional funding to enable the department to hire Dr. McAdoo and an additional person with expertise in theory and analysis.

Finally, the Court concludes from the credible evidence and testimony in the record that defendants also relied upon the fact that the plaintiff did not submit recommendations from full professors outside of the University. While the Court finds this to be a genuine, non-discriminatory basis upon which defendants legally relied in rejecting the plaintiff's candidacy for a full professorship, it must note that the suspect nature and questionable propriety of this reliance is all too characteristic of the entire process in which plaintiff McAdoo's application was reviewed and evaluated. Defendants' failure to contact full professors and experts outside of the University who could speak about Dr. McAdoo's work and stature in the field, and whose names were available to the defendants, the failure to conduct a professional and systematic review of the plaintiff's application, and the failure to follow established procedures has undoubtedly created or at least contributed to the suspicion that has arisen concerning defendants' motives in denying plaintiff an appointment as a full professor. Unthoughtful and premature comments by certain defendants critical of the plaintiff and her work also have unnecessarily contributed to the climate of distrust from which this litigation was spawned. Such practices are not likely to engender confidence and project a favorable image of the University, and its programs and departments in academic circles generally, and in the minority community in particular. Defendants' conduct, although not intentionally discriminatory, simply does not live up to the professional standards to which the University aspires.

In light of the foregoing discussion, the Court concludes that Dr. McAdoo was denied a faculty appointment at the University of Maryland for academic and not racial reasons. Therefore, plaintiff has failed to establish pretext and her claims under Title VII, §§ 1981 and 1983 must be denied. As noted above, the merits of hiring decisions must be left to the administrators ultimately responsible for them. This Court's review is limited to a determination of whether the plaintiff was discriminated against because of race. Finding no racial discrimination, judgment will be entered for defendants.