Clifford C. BUTLER

v.

WESTINGHOUSE ELECTRIC CORPORATION.

Civ. No. HM–87–463.

United States District Court, D. Maryland.

Oct. 29, 1987.

---

**25.** 15 U.S.C. 1601 et seq.

**26.** 15 U.S.C. 1701 et seq.

**27.** Barker dep. p. 80.

Patricia E. Butler, Baltimore, Md., and Willie J. Mahone, Frederick, Md., for plaintiff.

Leonard E. Cohen, Neal Serotte, and Ian N. Berger, and Frank, Bernstein, Conaway and Goldman, Baltimore, Md., for defendant.

## MEMORANDUM

HERBERT F. MURRAY, District Judge.

Plaintiff, Clifford Butler ("Butler"), a black male, brought the instant suit

against defendant, Westinghouse Electric Corporation ("Westinghouse"), after Westinghouse fired him for allegedly sleeping on the job. In his complaint[1], he alleges:

Count I: violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended 1972;

Count II: violation of 42 U.S.C. § 1981;

Count IV: breach of contract;

Count V: abusive discharge;

Count VI: intentional infliction of emotional distress; and

Count VIII: negligence.

Pending before the Court is defendant's Motion for Summary Judgment. The Court has reviewed the papers submitted by the parties and has determined that no hearing is required. Local Rule 6. The Court is now prepared to rule.

*Factual Background*

The parties dispute whether Westinghouse discriminated against Butler because of his race, and they dispute whether plaintiff was in fact sleeping. Other than that, their versions of the events leading up to and immediately following Butler's discharge coincide.

Westinghouse hired plaintiff on August 4, 1980 as a Reliability Technician D. Plaintiff's duties included testing power supply equipment for the F–16 fighter plane. Between August 4, 1980 and February 26, 1984, the day that he allegedly slept while at work, plaintiff received two written warnings for excessive absence and habitual tardiness, one verbal warning for being away from his work area without permission, and eight documented formal counselling sessions for being away from his work area without permission.[2]

Plaintiff came in on Sunday, February 26, 1984 to work overtime. On Sundays, the building is locked from both inside and out. Other than in emergencies those who report for work enter and exit only when a guard is available to unlock the doors. Plaintiff was let in, with others, at 6:00 A.M. On this particular day, no supervisors worked and none of the nurses or other medical personnel were present. At 10:30 A.M., Security Officer Don Gensler ("Gensler") noted that the door to a janitorial supply room was ajar. He looked in and saw plaintiff lying on the floor. Gensler walked a short distance down the hallway and punched in at the Detex clock, which recorded his presence in that part of the factory at that time. He then asked employee James Miele ("Miele") to accompany him to the janitorial supply room. When Gensler and Miele opened the door, plaintiff sat up and asked for aspirin. Gensler brought him three aspirins. In reports filled out later, Gensler stated that plaintiff was sleeping, and Miele stated that plaintiff looked like someone who had just awakened.

Plaintiff disputes vehemently that he was asleep. He claims that, during the morning, he developed a migraine headache. Butler had suffered from migraine headaches for the previous two years, and had received a prescription for medication containing one-half grain of codeine two days before this incident. He called the guard station to see if he could leave. The guard advised him that no guard would be available to let him out for at least an hour. Butler then began to search for aspirin. None of the nurses or supervisors, who could provide aspirin, were there. Plaintiff then looked in the supply room, knowing that some janitors kept aspirin in their lockers. He found none. At this point his headache had become so bad that he lay down on the floor of the closet and held his temples. When the security guard opened the door, plaintiff asked for aspirin. He then returned to his work station where he put his head down on his work table until the scheduled time for the guards to let people out of the building. Plaintiff then left and drove home.

The parties agree on what happened on Monday, February 27, 1984. Plaintiff re-

---

1. Plaintiff initially included one count of fraud and misrepresentation and one count of defamation. Plaintiff withdrew these two counts at the time of the pre-trial order.

2. Plaintiff does not contest that Westinghouse took these disciplinary measures. He does contest the justification for them.

ported to work as usual. He was called into the office of Jerome Breeding ("Breeding"), the operations manager for plaintiff's division. Plaintiff met there with Joe Topper[3] ("Topper") and Moe Lyons ("Lyons"), two of his supervisors. Butler told the story as outlined above. Topper suspended Butler pending further investigation. Plaintiff was then escorted out of the building. After an investigation, which did not include discussing with plaintiff his side of the story, Breeding and Harold Renninger of the Human Resources Division of Westinghouse decided to discharge plaintiff. Plaintiff was notified of this decision by telegram on March 1, 1984.

On March 5, 1984 plaintiff filed a complaint with the Equal Employment Opportunity Commission ("E.E.O.C."). On May 22, 1986, E.E.O.C. issued its determination that there was reasonable cause to believe that defendant had discriminated against plaintiff. Because defendant did not consent to enter into a conciliation agreement, E.E.O.C. issued a right to sue letter on February 5, 1987. The E.E.O.C.'s determination was based in part on the fact that on August 4, 1983, a few months before plaintiff's discharge, another Westinghouse employee, Robert Storm ("Storm"), a white male, admitted to sleeping in the rest room. He was given an opportunity to explain, and stated that he had taken prescribed medication which made him drowsy. For this offense, he received a written warning that was placed in his personnel file. Defendant does not dispute in any particular the evidence of its handling of the incident of Storm but maintains that Storm had a better disciplinary record than did Butler. With respect to this issue, the E.E.O.C. found:

> The record reveals that [Butler] since 1983 had received a written reprimand for being away from his work area, and

a warning for backing into a door alarm on February 26, 1984, the same day he was caught asleep. The White employee had been warned for coming back from lunch late, poor performance and lateness, fifty-nine (59) times during his last rating period.

E.E.O.C. Determination, May 22, 1986, attached as Exhibit C to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

*Standard for Summary Judgment*

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). On defendant's motion, the court must view all facts and draw all inferences in the light most favorable to plaintiff. *U.S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Butler, who has the burden of persuasion at trial, still has the burden of demonstrating the existence of genuine issues of material fact to avoid the entry of summary judgment against him. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Meadow Limited Partnership v. Heritage Savings and Loan,* 639 F.Supp. 643, 651 n. 9 (E.D.Va.1986).

*Counts I and II: Standards for Title VII and § 1981[4]*

Plaintiff alleges that Westinghouse's discrimination against him took the form of disparate treatment. He must therefore prove that the defendant's discrimination against him on the basis of his race was intentional. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854, 52 L.Ed.2d

---

**3.** Plaintiff remembers meeting with Breeding. However, Breeding remembers that plaintiff met with Topper, and the note regarding plaintiff's side of the story, dated February 27, 1984, was written by Joe Topper. Breeding testified during his deposition that he had never seen the note written by Topper, nor was he aware that plaintiff had stated that he had a headache that day. Breeding Deposition, attached as exhibit

to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, at pp. 43–46.

**4.** It is appropriate to review a § 1981 action under the standards of an action under Title VII. *Abasiekong v. City of Shelby,* 744 F.2d 1055, 1058 (4th Cir.1984); *McAdoo v. Toll,* 615 F.Supp. 1309, 1312 (D.Md.1985).

396 (1977); *McKenzie v. Sawyer*, 684 F.2d 62, 70 (D.C.Cir.1982). The Supreme Court has delineated the three part allocation of burden of production for such disparate treatment cases. Plaintiff must first demonstrate a *prima facie* case of intentional racial discrimination before he may go forward. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Burdine, supra*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). To accomplish this, plaintiff must produce enough evidence not only to permit the trier of fact to infer the fact at issue, but to mandate the entry of judgment in his favor if defendant fails to produce sufficient evidence to rebut. *Burdine, supra*, 450 U.S. at 254 n. 7, 101 S.Ct. at 1094 n. 7; *Flowers v. Crouch–Walker Corp.*, 552 F.2d 1277, 1283 n. 4 (7th Cir.1977). Once plaintiff has established his *prima facie* case, the burden shifts to defendant to rebut the presumption created. Defendant must produce evidence of legitimate non-discriminatory reasons for its actions. *Burdine, supra*, 450 U.S. at 254–55, 101 S.Ct. at 1094. To prevail at trial, plaintiff must then demonstrate the pretextual nature of defendant's stated reasons. *Burdine, supra.*, 450 U.S. at 255–256, 101 S.Ct. at 1094–95. The burden of persuasion at all times rests with plaintiff. *Burdine, supra*, 450 U.S. at 256, 101 S.Ct. at 1095.

■ Plaintiff's burden of establishing a *prima facie* case is not onerous. *Burdine, supra*, 450 U.S. at 253, 101 S.Ct. at 1093. Plaintiff must show that he, as a member of a protected group, was "treated differently than other similarly-situated individuals" and that "no adequate [non-discriminatory] explanation for the different treatment" exists. *Day v. Patapsco & Back Rivers Railroad Co.*, 504 F.Supp. 1301, 1310 (D.Md.1981). In a discriminatory discharge case, plaintiff must show that 1) he is a member of a protected group; 2) that there was a company policy or practice concerning the activity for which he was discharged; 3) non-minority employees either were given the benefit of lenient company practice or were not held to compliance with a strict company policy; 4) the minority employee was not given the benefit of a lenient policy or was held to compliance with the strict policy. *EEOC v. Brown & Root*, 688 F.2d 338, 340–341 (5th Cir.1982); *see also Hughes v. C & P Telephone Co.*, 583 F.Supp. 66, 69 (D.D.C.1983).

■ The Court finds that, applying the standards to the instant case, that plaintiff has made his prima facie case of racial discrimination. He is a member of a protected minority who received discipline which was more severe than that administered to a white employee. The court finds further that this evidence creates a genuine issue of material fact regarding whether Westinghouse intentionally discriminated against plaintiff, and whether its explanation for this disparate treatment is pretextual.

Westinghouse argues that, because Storm and plaintiff had different prior disciplinary records, the two were not "similarly situated" for the purposes of Title VII. The Court finds that this argument, while not relevant to the establishment of plaintiff's *prima facie* case, does sufficiently demonstrate a legitimate non-discriminatory reason for Westinghouse's actions, and would prevent the entry of summary judgment for plaintiff. However, it is not sufficient to defeat plaintiff's action, and the Court will therefore deny defendant's motion with respect to Counts I and II of plaintiff's complaint.

*Count IV: Breach of Contract*

■ Plaintiff alleges that, by failing to follow the disciplinary procedures outlined in its handbook, Westinghouse breached his employment contract. Westinghouse argues that it made no contract with Butler when it hired him, and that the handbook, which contained an explicit disclaimer of contractual intent, did not create one. The court agrees. Because Butler and Westinghouse had specified no definite term for Butler's employment, the parties had a contract of employment terminable at the will of either party. *Beye v. Bureau of National Affairs*, 59 Md.App. 642, 656, 477 A.2d 1197 (1984); *cert. denied*, 301 Md. 639, 384 A.2d 274 (1984); *Adler v. Ameri-*

can Standard Corp., 291 Md. 31, 35, 432 A.2d 464 (1981). Although in Maryland a handbook in an employment situation can be construed as creating a contract, *Staggs v. Blue Cross of Maryland, Inc.*, 61 Md. App. 381, 392, 486 A.2d 798 (1985), *cert. denied*, 303 Md. 295, 493 A.2d 349 (1985), when such a handbook contains an explicit disclaimer, it cannot be so construed. *Castiglione v. Johns Hopkins Hospital*, 69 Md.App. 325, 341, 517 A.2d 786 (1986). In bold print at the front, the Westinghouse handbook states "The contents are not to be construed as a contract of employment." On this basis, the court finds that, as a matter of law, no contract existed between plaintiff and defendant, and that therefore no breach could occur. Plaintiff stated in his deposition that he had no written or oral contract with Westinghouse. Plaintiff's Deposition, attached as Exhibit to Westinghouse Electric Corporation's Motion for Summary Judgment, at pp. 206–207. Plaintiff also stated that even if he had not known about the procedures in the handbook, he would have taken the same actions. Plaintiff's Deposition, at p. 193.

One further argument that plaintiff raises in response to defendant's motion is that defendant dealt with him in bad faith. The concept of an implied covenant of fair dealing and good faith has been rejected in contracts of employment at will. *Borowski v. Vitro Corp.*, 634 F.Supp. 252, 258 (D.Md. 1986). This argument does not suffice to defeat defendant's motion for summary judgment. Accordingly, the Court will enter summary judgment for defendant on Count IV of the complaint.

*Count V: Abusive Discharge*

Plaintiff alleges that, because Westinghouse refused to investigate his side of the story, and because Westinghouse did not permit him to return to work, it discharged him abusively. Maryland recognized the tort of abusive discharge in 1981. *Adler, supra*, 291 Md. at 47, 432 A.2d 464. The Court of Appeals held that the plaintiff must identify, "with the requisite degree of specificity" the public policy which defendant's action violated. *Adler, supra*, 291 Md. at 46, 432 A.2d 464. Plaintiff states

that the public policy that Westinghouse violated is the public policy against racial discrimination. However, it has been held that a cause of action for abusive discharge when the underlying public policy is racial discrimination is pre-empted by Title VII and analogous state statutory remedies. *Chekey v. BTR Realty*, 575 F.Supp. 715, 717–718 (D.Md.1983). As plaintiff points to no other violation of public policy, the Court will grant defendant's motion and will enter summary judgment in its favor with respect to Count V.

*Count VI: Intentional Infliction of Emotional Distress*

Plaintiff alleges that, by firing him and not firing the white employee for the same transgression, and by not acknowledging his problem with migraine headaches, the defendant intentionally inflicted emotional distress upon him. To make a *prima facie* case of this tort, plaintiff must show that:

1) Westinghouse acted intentionally or recklessly;

2) its conduct was extreme and outrageous;

3) the wrongful conduct caused the emotional distress;

4) the emotional distress was severe.

*Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611 (1977).

The court first determines whether reasonable people could find that the conduct involved was extreme and outrageous. *Harris, supra*, 281 Md. at 569, 380 A.2d 611. This is conduct that "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris, supra.*, 281 Md. at 567, 380 A.2d 611. Further, the conduct must completely deny "the plaintiff's dignity as a person." *Leese v. Baltimore County*, 64 Md.App. 442, 469–470, 497 A.2d 159 (1985), *cert. denied*, 305 Md. 106, 501 A.2d 845 (1985), *quoting Dick v. Mercantile–Safe Deposit and Trust Company*, 63 Md.App. 270, 276, 492 A.2d 674 (1985). In considering this, the court should take note

of the fact that defendant was in a particularly powerful position to inflict emotional distress, as plaintiff was its employee. *Moniodis v. Cook*, 64 Md.App. 1, 17, 494 A.2d 212 (1985); *Harris, supra,* 281 Md. at 569, 380 A.2d 611.

As discussed above in the section on Title VII and § 1981, plaintiff presents enough evidence to raise an issue of fact that his discharge was based on intentional racial discrimination. The court finds, with respect to the disparate disciplinary action, that a reasonable person could find that such racial discrimination could be conduct so atrocious that no one in civilized society should have to tolerate it, and also that it completely denies the dignity of a plaintiff as a human being. *See e.g., Alcorn v. Anbro Engineering, Inc.,* 468 P.2d 216, 86 Cal.Rptr. 88, 2 Cal.3d 493 (1970), cited in *Harris, supra,* 281 Md. at 569, 380 A.2d 611. Further, as discussed in the section on Title VII and Section 1981, plaintiff has presented evidence such that a reasonable person could infer intent on the part of the defendant. The Court will not grant summary judgment on this basis on this part of plaintiff's claim. However, with respect to plaintiff's claim that Westinghouse failed to acknowledge his problem with migraine headaches, the Court finds that this does not state a claim of outrageous conduct sufficient enough to satisfy the second element of this cause of action.

■ The court will, however, grant summary judgment on this count of plaintiff's complaint because plaintiff has not suffered the damages required by this tort. Although he discusses his headaches, his increased level of anxiety and stress, his condition is not remotely comparable to that of the plaintiff in the one case in which the Maryland courts have allowed recovery under this tort in a termination situation. In *Moniodis, supra,* 64 Md.App. 1, 494 A.2d 212, the plaintiff was completely disabled. She was incapable of caring for herself, took increased medication, and began to sleep for extended periods. *Moniodis, supra,* 64 Md.App. at 16-17, 494 A.2d 212. Butler has been capable of looking for jobs, and has not presented any evidence to show that he suffered an emotional response so severe that "no reasonable man could be expected to endure it." *Harris, supra.,* 281 Md. at 571, 380 A.2d 611. The court will enter summary judgment for defendant on Count VI of plaintiff's complaint.

*Count VIII: Negligence*

■ Plaintiff alleges that, by failing to investigate, defendant breached "a duty of ordinary care to investigate the violation of company policy and knew that the discharge was racially motivated which caused additional damages of humiliation, embarassment, anxiety and emotional distress." To make a claim for negligence, plaintiff must establish that there was a duty of care owed by defendant to him and that defendant's violation of that duty caused him to suffer injury and damages. *George Byers Sons, Inc. v. East Europe Import Export,* 488 F.Supp. 574, 580 (D.Md.1980); *Myers v. Montgomery Ward & Co.,* 253 Md. 282, 291, 252 A.2d 855 (1969); The duty must arise from a statute or a law. *Prouty v. National Railroad Passenger Corp.,* 572 F.Supp. 200, 206 (D.D.C.1983).

Defendant argues, among other things, that plaintiff points to no source for the duty he alleges defendant owes him. The court agrees. The court is aware of no duty to investigate, and plaintiff fails to elucidate one. Further, plaintiff cannot show either personal injury or property damage. His headaches, stress and anxiety do not constitute sufficient injury to make a claim for negligence. Accordingly, the court will enter summary judgment for defendant on Count VIII of the complaint.

The court will enter a separate order incorporating its rulings.