561 A.2d 179

### Carolyn M. MAKOVI

v.

### The SHERWIN-WILLIAMS COMPANY.

No. 66, Sept. Term, 1988.

Court of Appeals of Maryland.

July 26, 1989.

Motion for Reconsideration Denied Sept. 1, 1989.

Benjamin Lipsitz, Baltimore, for petitioner.

Barry Bach (Antonio R. Lopez, Smith, Somerville, & Case, all on brief) Baltimore, for respondent.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

RODOWSKY, Judge.

■ In this appeal we shall hold that an abusive discharge claim does not lie. The plaintiff alleges that her dismissal from employment was motivated by sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17 (1982) and of Md.Code (1957, 1986 Repl.Vol.), Art. 49B, §§ 14–18. Our holding rests not on any legislative preemption but on the nature of the tort. Abusive discharge is inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy.

Petitioner, Carolyn M. Makovi (Makovi), was employed on an at-will basis as a chemist at a paint factory operated in Maryland by respondent, The Sherwin–Williams Company (Sherwin–Williams). In August 1983 Makovi learned that she was pregnant. On October 10, 1983, she was informed by Sherwin–Williams that "she could not work at her job as long as she was pregnant" and "that her pay and her medical benefits would stop until she became disabled because of her pregnancy."

Makovi filed a complaint with the Federal Equal Employment Opportunity Commission (EEOC). The EEOC, on December 5, 1985, determined that there was not "reasonable cause to believe" that Makovi was the victim of sex discrimination and notified her of her right to file an action under Title VII in the United States District Court. Instead, Makovi filed suit for abusive discharge in the Circuit Court for Baltimore City, alleging that she desired to and was fully capable of continuing to work from October 10, 1983, until April 12, 1984, the date her baby was born. She further alleged that Sherwin–Williams discharged her

"acting on the pretext that it was doing so because plaintiff's removal from her work was required by her physician because of her pregnancy, when in fact it was not, and/or acting on some other pretextual basis and/or some policy basis of its own, excluded her from her work,

required her to leave her work and effectively terminated her employment on and as of October 10, 1983."

Makovi returned to work on June 14, 1984.[1] She asserted that the temporary discharge violated the public policy embodied in Art. 49B and Title VII.[2]

Sherwin–Williams filed a motion to dismiss asserting that "Maryland does not recognize a common law cause of action for abusive or wrongful discharge where there is an available statutory remedy." The circuit court granted the motion.[3] The Court of Special Appeals affirmed. *Makovi v. Sherwin–Williams Co.*, 75 Md.App. 58, 540 A.2d 494 (1988).[4] We granted certiorari to determine the important issue involved. 313 Md. 572, 546 A.2d 490 (1988).

In order to present the legal positions of the parties, some background should be reviewed briefly. Title VII of the Civil Rights Act of 1964 was enacted by Congress "to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147, 155 (1974). The effective date of Title VII was July 2, 1965. Pub.L. No. 88–352, § 716, 78 Stat. 253,

---

1. Because we decide this case on other grounds, we assume, without deciding, that these facts present a "discharge" within the scope of the tort of wrongful discharge.

2. Makovi also alleged that her discharge violated the policy embodied in art. 24 of the Maryland Declaration of Rights and in the due process and equal protection clauses of the fourteenth amendment of the United States Constitution. We need not consider those allegations because there is no contention that state action was involved in the conduct by Sherwin–Williams.

3. Because of "extraneous" allegations, the circuit court treated the motion as one for summary judgment. *See* Md. Rule 2–322(c).

4. The Court of Special Appeals had the case on remand from this Court's reversal of the intermediate appellate court's prior dismissal of the appeal for lack of a final judgment. *Makovi v. Sherwin–Williams Co.*, 311 Md. 278, 533 A.2d 1303 (1987).

266 (1965). Employers with fifteen or more employees are subject to Title VII. *See* 42 U.S.C. § 2000e(b).

The EEOC was created "to prevent any person from engaging in any unlawful employment practice as set forth in section 2000e–2 or 2000e–3...." § 2000e–5(a). The EEOC performs this function by "informal methods of conference, conciliation, and persuasion," or by civil action in the United States District Court. § 2000e–5(b), (f). Upon a finding of an unlawful employment practice, the court may enjoin the employer's actions, reinstate the employee, award up to two years back pay, or "order such affirmative action as may be appropriate[.]" § 2000e–5(g).[5] If the EEOC determines that there is no reasonable cause or basis for an allegation of discrimination, it notifies the employee making the claim of his or her right to bring a civil action in the United States District Court. *See* 29 C.F.R. § 1601.28(b)(3)(i) (1988).

The General Assembly of Maryland responded to Title VII by enacting the Maryland Fair Employment Practices Law. Ch. 717 of the Acts of 1965. In it, the Legislature declared that the policy of Maryland is to "assure all persons equal opportunity in receiving employment ... regardless of race, color, religion, ancestry or national origin, sex, [or] age...." Art. 49B, § 14. The Maryland Fair Employment Practices Law became effective July 1, 1965—the day before the effective date of Title VII. Ch. 717 of the Acts of 1965, § 2.

Like its federal counterpart, the original version of the Maryland statute declared discriminatory employment practices to be unlawful. *See* Art. 49B, § 16. It provided for limited enforcement through an administrative agency, now the Human Relations Commission (HRC) (then entitled "Interracial Commission"). In 1965 enforcement of Art. 49B

---

**5.** The provisions which authorized the court to order affirmative action, including two years back pay, were added by the Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103 (1973).

did not include any monetary relief. *See Gutwein v. Easton Publishing Co.,* 272 Md. 563, 325 A.2d 740 (1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975). Power to award back pay of up to two years in connection with an order of reinstatement or hiring was conferred on the HRC by Ch. 937 of the Acts of 1977. *See* Art. 49B, § 11(e).

Four years later this Court initially recognized the tort of abusive discharge in *Adler v. American Standard Corp.,* 291 Md. 31, 432 A.2d 464 (1981). The allegations in *Adler* were that the discharge was motivated by the plaintiff's refusal to conceal or participate in accounting and tax irregularities and in commercial bribery.

The instant case asks us to decide the legal effect of the recognition of abusive discharge when superimposed on the preexisting framework of anti-discrimination legislation. Makovi's position is that abusive discharge will lie whenever the motivation for the discharge is contrary to a clear mandate of public policy. She submits that *Adler* placed no other limitations or requirements on the tort. Under Makovi's analysis Title VII and Art. 49B have no effect on her utilizing the tort to vindicate the alleged wrong because those statutes do not preempt her independent tort remedy. In her view "[w]hether called preemption, or preclusion, or bar, or otherwise identified, the issue here is purely and simply preemption *vel non.*" Petitioner's Reply Brief at 4.

From that premise Makovi proceeds to demonstrate that the statutes do not preempt the tort. Title VII expressly preserves state remedies.[6] Further, we have held that Art. 49B does not preempt, by occupying the field, local prohibitions against employment discrimination. *See National*

---

6. 42 U.S.C. § 2000e–7 provides:
   "Nothing in this subchapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State, other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter."

*Asphalt Pavement Ass'n v. Prince George's County*, 292 Md. 75, 437 A.2d 651 (1981). In *Maryland–Nat'l Capital Park & Planning Comm'n v. Crawford*, 307 Md. 1, 511 A.2d 1079 (1986) we held that a State employee claiming race discrimination need not exhaust remedies under Title VII before suing under 42 U.S.C. § 1983 and that Art. 49B does not establish primary jurisdiction in the HRC prior to a plaintiff's asserting a claim which is independent of Art. 49B. Makovi concludes that she "has satisfied the sole condition imposed by this Court for assertion of that independent action, since she has alleged that the motivation for her discharge contravened clear mandates of public policy...." Petitioner's Brief at 34.

The respondent's principal argument is that abusive discharge does not lie where the public policy sought to be vindicated by the tort is expressed in a statute which carries its own remedy for vindicating that public policy. Sherwin–Williams does not argue that the General Assembly in 1965 or 1977 intended to preclude a tort which did not then exist and does not argue that the General Assembly intended to preclude or preempt any and all remedies arising out of facts constituting a violation of Art. 49B. In addition, Sherwin–Williams submits that the anti-discrimination goal of the allegedly applicable statutes and the remedy legislatively created to achieve that goal together make up the public policy. In the employer's view, Makovi seeks to divorce the statutory remedy from the goal and, in the name of achieving the goal, enlarge the remedy for a statutory violation to full compensatory and punitive damages in tort.

We agree with Sherwin–William's analysis.

## I

The limited nature of the abusive discharge tort follows logically from the structure of our opinion in *Adler*. We started with the common law rule that at-will employment "can be legally terminated at the pleasure of either party at any time." 291 Md. at 35, 432 A.2d at 467. We then

referred to statutory exceptions engrafted upon the terminable at-will doctrine and specifically referred to Art. 49B's prohibition against discriminatory discharge from employment as an example of a statutory exception. *Id.* Putting statutory exceptions to the side, we next turned to judicial exceptions which had been recognized in other states. We noted that some courts had constructed a contract remedy by implying a covenant of good faith and fair dealing in all at-will employments. *Id.* at 36–37, 432 A.2d at 467–68. However, a majority of those courts which at that time had recognized wrongful discharge treated the claim as one in tort. *Adler* then reviewed the "first round" of cases which had initially adopted the public policy exception to the terminable at-will doctrine. *All* of the cases reviewed in *Adler* dealt with discharge because of the employee's conduct. *None* of the cases reviewed in *Adler* dealt with discharge because of the employee's status, *i.e.*, the employee's race, sex, age, religion, or national origin.

The "first round" cases were reviewed in Note, *Protecting Employees At Will Against Wrongful Discharge: The Public Policy Exception*, 96 Harv.L.Rev. 1931, 1936–37 (1983). That author concluded that "[a]lthough the public policy exception is still evolving, courts have so far found it to apply to discharges involving three broad categories of motives.

"1. *Refusing to Commit an Unlawful Act.*—The most typical cases are those of employees fired for refusing to give false testimony at a trial or administrative hearing.

"2. *Performing an Important Public Obligation.*— Several states have recognized a cause of action for employees fired for serving jury duty, for 'blowing the whistle' on illegal conduct by their employers, or for refusing to violate a professional code of ethics.

"3. *Exercising a Statutory Right or Privilege.*—A third category of cases involves employees fired for filing workers' compensation claims or refusing to take polygraph tests."

(Footnotes omitted). *See also* Lopatka, *The Emerging Law of Wrongful Discharge—A Quadrennial Assessment of the Labor Law Issue of the 80's,* 40 Bus.Law. 1, 6–17 (1984) (similarly dividing the public policy exception into three categories of cases).

The first category, cases where the employee was discharged for refusing to commit an unlawful or wrongful act, includes *Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 610 P.2d 1330, 164 Cal.Rptr. 839 (1980) (employee discharged for refusing to participate in illegal price-fixing scheme); *Petermann v. International Bhd. of Teamsters Local 396,* 174 Cal.App.2d 184, 344 P.2d 25, 29 Cal.Rptr. 399 (1959) (employee terminated for refusing to perjure himself before state legislative committee); and *Trombetta v. Detroit, T., & I. R.R.,* 81 Mich.App. 489, 265 N.W.2d 385 (1978) (employee discharged for refusing to alter pollution control reports in violation of state law). Illustrating the second category, cases where the employee was fired for performing an important public obligation, are *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980) (employee fired for insisting that employer comply with state and federal product labeling and licensing law); *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981) (employee discharged for reporting the suspected criminal activity of co-employee to law enforcement authorities); *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975) (en banc) (employee fired for serving jury duty). The final category, involving employees discharged for exercising a legal right or privilege, is represented by *Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363 (3d Cir.1979) (employee fired for refusal to take polygraph test); *Frampton v. Central Ind. Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973) (employee fired in retaliation for filing workers' compensation claim).

Thus, the Court of Special Appeals in its *Makovi* correctly analyzed *Adler* when it said:

"It does seem clear, however, that the Court was focusing on what it perceived to be a void in the law—a

discharge not expressly and directly precluded by some specific statute but which nevertheless contravened some other general statement of public policy. If there were already an adequate alternative remedy in existence, the legitimate interest of the employee that the Court identified as being deserving of recognition would indeed have attained that recognition, and the newly created common law remedy would be unnecessary to assure its protection. This suggests the notion that the new cause of action was not intended to supplant existing statutory remedies, at least not those specifically crafted and effective to provide an adequate remedy for the unlawful act."

75 Md.App. at 64, 540 A.2d at 497 (footnote omitted).

*Ewing v. Koppers Co.*, 312 Md. 45, 537 A.2d 1173 (1988) does not resolve the legal problem now before us. Ewing alleged that he was discharged in retaliation for having filed a workers' compensation claim. The complicating overlay was that Ewing was a member of a bargaining unit protected by a collective bargaining agreement. We held that the criminal sanction provided by Md.Code (1957, 1985 Repl.Vol.), Art. 101, § 39A for that type of retaliatory discharge did not preclude an abusive discharge tort. We further held that the availability of contract remedies did not prevent the tort from lying. Contract damages and other contract remedies ordinarily are intended to protect the expectation interest of the promisee. Unlike the abusive discharge tort, contract remedies are not intended to vindicate specific public policies. *Ewing* did not address whether the tort will lie when the statute proclaiming the very public policy on which existence of the tort depends also provides a civil remedy for violation of that policy.

The general theme running through the wrongful discharge "first round" decisions of other courts is the absence of any other remedy for the employee discharged in contravention of public policy. The tort was created so that the prospect of a remediless employee would not undercut the policies and goals that other laws sought to further. Consequently, a majority of courts faced with the issue

before us has held that the tort does not lie for a discharge allegedly motivated by some discrimination which is prohibited by statute where that statute confers a remedy. The analysis looks at the limited nature of the tort, although many of the opinions additionally address whether the legislative remedy is exclusive.[7] Even though the issue involves a given state's tort law, the issue has arisen more frequently in federal than in state courts.

The plaintiff in *Chekey v. BTR Realty, Inc.,* 575 F.Supp. 715 (D.Md.1983) sought to extend *Adler* by asserting abusive discharge based on age discrimination in violation of Art. 49B and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. Judge Miller dismissed. His principal rationale is found in the following passage of his opinion:

"Because the Maryland legislature has already enacted an exception to the terminable at will doctrine based on acts of employment discrimination in Article 49B, and the Court of Appeals of Maryland, in considering the creation of a new judicially recognized cause of action for abusive discharge, noted that it was addressing a situation where there was no statutory remedy, this court concludes that the *Adler* [ ] decision is limited to its facts. There the Maryland appellate court recognized a claim of abusive discharge as an exception to the terminable at will doctrine when public policy is violated but where a statutory exception to that doctrine had not already been provided."

*Id.* at 717 (footnote omitted). He concluded that "the Maryland courts have not recognized a judicial exception to the terminable at will doctrine for a violation of clear public policy where a statutory exception already exists to redress

---

7. In this context "exclusive" means a rationale and not a result. Obviously, if abusive discharge does not lie and there is no remedy for the employer's conduct other than that provided in the anti-discrimination statute, the statutory remedy is exclusive because it is the only available remedy. Exclusivity of the statutory remedy as a rationale, however, has a number of meanings in the cases. It can mean statutorily expressed or implied preemption of all other remedies. Exclusivity, as a rationale, can also mean either that exhaustion of administrative remedies is required or that primary jurisdiction lies in the anti-discrimination enforcement agency before an independent action may be pursued.

violations of that public policy." *Id.* at 717–18. *See also Vasques v. National Geographic Soc'y,* 34 Fair Empl.Prac. Cas. (BNA) 295, 296–97, 1982 WL 1728 (D.Md.1982) (Jones, J.) ("Several courts have held that an action for wrongful discharge does not lie, or that the public policy exception does not apply, where a statutory remedy to enforce the policy exists."). Most recently the United States Court of Appeals for the Fourth Circuit, in a per curiam opinion by a panel which included District of Maryland Senior Judge Kaufman, applied the opinion of the Court of Special Appeals in *Makovi.* They concluded that "[i]n the light of the great number of cases, including those from the District of Maryland, which accord with the decision in *Makovi,* we do not believe that the Court of Appeals of Maryland 'would decide otherwise.'" *Parlato v. Abbott Laboratories,* 850 F.2d 203, 207 (4th Cir.1988).[8]

Other federal courts have dismissed wrongful discharge actions for similar reasons. For example, *Lapinad v. Pacific Oldsmobile–GMC, Inc.,* 679 F.Supp. 991 (D.Haw.1988) held that a discharge on alleged sex discrimination grounds could not be remedied by abusive discharge where state and federal statutory remedies already protected the public interest at stake:

"[The public policy] exception was intended to apply to a 'narrow class of cases' where the wrongful discharge action is seen as necessary to effectuate the public policy at stake. If, however, the statutory or regulatory provisions which evidence the public policy themselves provide

---

**8.** Makovi undertakes to distinguish the federal cases interpreting *Adler* primarily on the ground that they misinterpreted *Soley v. State Comm'n on Human Relations,* 277 Md. 521, 356 A.2d 254 (1976). That distinction goes to those passages of the federal opinions dealing with whether the Legislature intended Art. 49B to be the exclusive remedy for claims of employment discrimination. That distinction does not meet the rationale which had been applied by the Court of Special Appeals and, in turn, by the Fourth Circuit and which had been applied early on by Judge Miller.

In a motion for reconsideration Makovi advises that the Fourth Circuit, by an unreported order of October 31, 1988, in terms withdrew the opinion and mandate in *Parlato* to abide the outcome of our grant of certiorari in this case.

a remedy for the wrongful discharge, provision of a further remedy under the public policy exception is unnecessary. If the legislature has considered the effect of wrongful discharge on the policies which they are promoting, provision by the courts of a further remedy goes beyond what the legislature itself thought was necessary to effectuate that public policy."

*Id.* at 993. *See also Lui v. Intercontinental Hotels Corp.,* 634 F.Supp. 684 (D.Haw.1986) (noting that state and federal statutory remedies for sex discrimination were not exclusive, court held that public policy exception did not apply where the statute creating that policy also provided a remedy).

The U.S. District Court for the District of New Mexico also refused to recognize a wrongful discharge action on sex discrimination grounds because of an available statutory remedy under Title VII and its state counterpart. The court reasoned that "[w]here a remedy other than [the wrongful discharge] tort is available to [p]laintiff to redress the discharge, the policy which underlies New Mexico's recognition of the tort, that of softening the terminable at will rule, does not favor recognizing a cause of action." *Salazar v. Furr's, Inc.,* 629 F.Supp. 1403, 1408 (D.N.M. 1986).

A federal district court in Pennsylvania, after an examination of cases adopting the tort of wrongful discharge, held that "application of the public policy exception requires two factors: (1) that the discharge violate some well-established public policy; and (2) that there be no remedy to protect the interest of the aggrieved employee or society." *Wehr v. Burroughs Corp.,* 438 F.Supp. 1052, 1055 (E.D.Pa. 1977), *aff'd on other grounds,* 619 F.2d 276 (3d Cir.1980). The court concluded that the remedies provided by the Pennsylvania anti-discrimination statute were not exclusive, but nevertheless reasoned:

"A finding that certain conduct contravenes public policy is not enough by itself to warrant the creation of a contract remedy for wrongful dismissal by an employer.

The cases which have established a tort or contract remedy for employees discharged for reasons violative of public policy have relied upon the fact that in the context of their case the employee was otherwise without remedy and that permitting the discharge to go unredressed would leave a valuable social policy to go unvindicated.
. . . .

"It is clear . . . that the whole rationale undergirding the public policy exception is the vindication or the protection of certain strong policies of the community. If these policies or goals are preserved by other remedies, then the public policy is sufficiently served."

*Id.* at 1054–55. Since the plaintiff's discharge was in violation of the statutory public policy against age discrimination, and because that public policy was preserved by remedies provided by state statute, the court found that the creation of a contract remedy was inappropriate in that case. *Id.* at 1056. *See also Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 919 (3d Cir.1982) (declining to extend the public policy exception to discharges on grounds of handicap or disability discrimination, the court found that the only Pennsylvania state court cases applying the exception had done so where no statutory remedy was available); *Lofton v. Wyeth Laboratories, Inc.*, 643 F.Supp. 170, 174 (E.D.Pa.1986) (availability of a statutory remedy defeats wrongful discharge action based on the public policy against racial discrimination); and *Krushinski v. Roadway Express, Inc.*, 627 F.Supp. 934, 937 (M.D.Pa.1985) (holding that although a discharge based upon the employee's religious beliefs would violate public policy, a common law remedy would be inappropriate where statutory remedy is available to vindicate the protected interest).[9]

---

9. Makovi undertakes to distinguish the cases applying Pennsylvania tort law on the basis that the Pennsylvania statute contains an express exclusivity provision. Once again, this "distinction" does not meet the rationale set forth above.

The question of the exclusivity of the Pennsylvania statute's remedy may have been put to rest recently in *Clay v. Advanced Computer*

Other federal cases utilizing the same analysis to hold that the tort does not apply to status-based discharges otherwise covered by state or federal statutory remedies include: *Grubba v. Bay State Abrasives*, 803 F.2d 746, 747 (1st Cir.1986) (the wrongful discharge "cause of action exists only when there is no other adequate way to vindicate the public policy"); *Napoleon v. Xerox Corp.*, 656 F.Supp. 1120, 1125 (D.Conn.1987) ("unlike [the remediless employee in] *Sheets*, [where Connecticut recognized the tort of wrongful discharge], the plaintiff has an explicit state statutory remedy for the defendant's alleged misconduct"); *Reeder–Baker v. Lincoln Nat'l Corp.*, 644 F.Supp. 983, 986 (N.D.Ind.1986) ("[T]he important point [is] that the [public policy] exception to the at will doctrine was intended to protect an employee without a remedy. That consideration is not present here, where plaintiff does have available remedies."); *Greene v. Union Mut. Life Ins. Co.*, 623 F.Supp. 295, 299 (D.Me.), *rev'd on other grounds*, 764 F.2d 19 (1st Cir.1985) (although discharge on basis of age would violate public policy expressed in state and federal anti-discrimination statutes, "[c]reation of a new tort would dupli-

---

*Applications, Inc.*, —— Pa. ——, 559 A.2d 917 (1989). A decision of the Pennsylvania Supreme Court, *Fye v. Central Transp., Inc.*, 487 Pa. 137, 409 A.2d 2 (1979), had been interpreted by some other courts to permit an election of remedies between administrative relief and abusive discharge. The majority in *Clay* held that the availability of the statutory remedy "precludes assertion of a common law tort action for wrongful discharge based upon discrimination." *Id.* at ——, 559 A.2d at 918. As a matter of substantive Pennsylvania tort law the majority went on to observe that "common law rights to be free from termination of at-will employment are not generally recognized, and we have never held that at-will employment terminations arising from sex discrimination are actionable at common law." *Id.* at ——, 559 A.2d at 919. Concurring Justices Zappala and Larsen did not want to "eliminate the possibility that [Pennsylvania's] developing body of common law would encompass a cause of action for wrongful discharge arising out of sexual discrimination once that issue" was before the court. *Id.* at ——, 559 A.2d at 924. Chief Justice Nix, the author of *Fye*, also concurred. He would have rested the decision solely on the ground that "Pennsylvania does not recognize a common-law action by an employee for termination of an at-will employment relationship based on sex discrimination." *Id.* at ——, 559 A.2d at 923.

cate the remedies already provided for the statutorily-created right to be free from age discrimination, and is, therefore, not necessary or proper"); *Tarr v. Riberglass, Inc.,* 115 L.R.R.M. (BNA) 3688, 3690, 1984 WL 1481 (D.Kan.1984) (refusing to recognize wrongful discharge action for age discrimination, as plaintiff had federal statutory remedy and "cases across the country that have recognized the tort ... [have done so where] the aggrieved employees have been without any method to gain redress"); *Brudnicki v. General Elec. Co.,* 535 F.Supp. 84, 89 (N.D.Ill.1982) ("the Illinois courts acknowledged the need to recognize the tort of retaliatory discharge precisely because there was no other remedy available to vindicate the public policy involved"); *McCluney v. Jos. Schlitz Brewing Co.,* 489 F.Supp. 24, 26 (E.D.Wis.1980) ("The rationale for the cases ... which established the 'public policy' exception ... is that a private remedy should be implied for employment discharges violative of public policy, when there is no other adequate remedy to vindicate such policy.").

In *Crews v. Memorex Corp.,* 588 F.Supp. 27, 29 (D.Mass. 1984) the court held that the tort was not available for discharges on the alleged basis of age discrimination because "the theoretical reason for creating a common law tort action based on public policy is absent when a statutory remedy is available." When the same issue was presented to the Massachusetts intermediate appellate court in *Melley v. Gillette Corp.,* 19 Mass.App. 511, 475 N.E.2d 1227 (1985), that court refused to recognize the tort for at least two reasons. First, "[t]he rationale for implying a private remedy under the 'public policy exception' to the traditional rule governing at will employment contracts is that, unless a remedy is recognized, there is no other way to vindicate such public policy." *Id.* at 511–12, 475 N.E.2d 1228. Secondly, "creation of a new common law action based on the public policy expressed in [the] statute would interfere with that remedial scheme." *Id.* at 513, 475 N.E.2d at 1229. The Supreme Judicial Court of Massachusetts affirmed. *Melley v. Gillette Corp.,* 397 Mass. 1004, 491 N.E.2d 252

(1986). In a brief and delphic opinion that court said: "We adopt both the analysis and conclusion of the opinion of the [intermediate appellate court], and hold that the plaintiff may not bypass the provisions of the statute." *Id.* at 1004, 491 N.E.2d at 253.

Although less numerous, the authoritative state court decisions on status discrimination abusive discharge are to the same general effect as the federal decisions reviewed above. In *Allen v. Safeway Stores, Inc.*, 699 P.2d 277 (Wyo.1985), the Supreme Court of Wyoming declined to extend the public policy exception to discharges on alleged sex discrimination grounds and reasoned:

"A tort action premised on violation of public policy results from a recognition that allowing a discharge to go unredressed would leave a valuable social policy to go unvindicated. If there exists another remedy for violation of the social policy which resulted in the discharge of the employee, there is no need for a court-imposed separate tort action premised on public policy."

*Id.* at 284. *Accord Ficalora v. Lockheed Corp.*, 193 Cal. App.3d 489, 238 Cal.Rptr. 360 (1987); *Gamble v. Levitz Furniture Co.*, 759 P.2d 761 (Colo.App.1989); *Kofoid v. Woodard Hotels*, 78 Or.App. 283, 716 P.2d 771 (1986).[10] *But see Rojo v. Kliger*, 209 Cal.App.3d 10, 257 Cal.Rptr. 158 (1989).

---

10. Oregon law on abusive discharge appears to hold closely to the "first round" cases. In *Delaney v. Taco Time Int'l*, 297 Or. 10, 681 P.2d 114 (1984) (en banc), the Oregon Supreme Court consolidated its wrongful discharge cases into three general categories: (1) discharges for fulfilling a societal obligation; (2) discharges for pursuing private statutory rights which relate to the plaintiff's role as an employee and which are of important public interest; and (3) cases in which wrongful discharge will not be recognized because there is an adequate existing remedy which protects the interests of society. Then, in *Holien v. Sears, Roebuck & Co.*, 298 Or. 76, 689 P.2d 1292 (1984) (en banc), the plaintiff alleged that she had been dismissed because she had filed a complaint of sexual harassment with federal and state agencies. *Holien* reasoned that the plaintiff was not seeking damages for discriminatory sexual harassment but for "following her rightful resistance to those demands or harassment." *Id.* at 90, 689 P.2d at

**620**

Not without significance here is that the Supreme Court of New Hampshire has strictly limited the scope of its pioneer abusive discharge decision, *Monge v. Beebe Rubber Co.*, 114 N.H. 130, 316 A.2d 549 (1974). That court now construes *"Monge* to apply only to a situation where an employee is discharged because he performed an act that public policy would encourage, or refused to do that which public policy would condemn." *Howard v. Dorr Woolen Co.*, 120 N.H. 295, 297, 414 A.2d 1273, 1274 (1980). *Howard* held that a discharge because of age did not fall within the narrow category of the tort with the result that the plaintiff's remedy was under the state anti-discrimination statute.

Sometimes the facts underlying a discharge constitute both a violation of an anti-discrimination statute and of another, more narrowly focused, statute reflecting clear public policy but providing no civil remedy. *Lucas v. Brown & Root, Inc.*, 736 F.2d 1202 (8th Cir.1984) illustrates an analysis which utilizes the narrower ground. There the plaintiff alleged that she had been fired because she refused to sleep with her foreman. The court reasoned that "[a] woman invited to trade herself for a job is in effect being asked to become a prostitute." *Id.* at 1205. Prostitution was a crime denounced by Arkansas statute. The Eighth Circuit predicted the Supreme Court of Arkansas would find an abusive discharge because the plaintiff "should not be penalized for refusing to do what the law forbids." *Id.*

The result sought by Makovi has been reached in cases from Arizona, Michigan, Nevada and New Jersey. As to Arizona, see *Bernstein v. Aetna Life & Casualty*, 843 F.2d 359 (9th Cir.1988), and *Broomfield v. Lundell*, 159 Ariz. 349, 767 P.2d 697 (Ct.App.1988), *review denied* (1989); as to

1300. The *Holien* court placed the case in the second category. *Kofoid* presented allegations of dismissal based on gender discrimination but not allegations of retaliation for asserting important employment oriented rights. Thus, the *Kofoid* court held that the facts fell into the third category.

Michigan, see *Holmes v. Haughton Elevator Co.*, 404 Mich. 36, 272 N.W.2d 550 (1978); as to Nevada, see *Savage v. Holiday Inn Corp.*, 603 F.Supp. 311 (D.Nev.1985); and as to New Jersey, see *Erickson v. Marsh & McLennan Co.*, 227 N.J.Super. 78, 545 A.2d 812, *cert. granted*, 113 N.J. 640, 552 A.2d 165 (1988). *But see Blum v. Witco Chem. Corp.*, 829 F.2d 367 (3d Cir.1987) (predicting that the Supreme Court of New Jersey would not extend abusive discharge to age discrimination). The common denominator of these cases is that the result turns on the absence of legislative preemption. These cases present no analysis of the effect of an existing statutory remedy on the peculiar nature of abusive discharge. The inference is that the argument made here by Sherwin–Williams was not presented to those courts.

II

At a more fundamental level the principle governing Makovi's analysis seems to be that the judicially created tort occupies the entire spectrum of discharges which are contrary to public policy unless there is a legislative prohibition. This approach, in the cases of Title VII and Art. 49B, fails to recognize that the remedies provided to eliminate prohibited discrimination form part of the anti-discrimination policy.

Although clear public policy under federal as well as Maryland law can supply the basis for an abusive discharge action under Maryland tort law, whether the tort furnishes an additional remedy against violations of the policy against employment discrimination is solely a state law issue. From the federal standpoint it is settled that the monetary remedy in a Title VII action is limited to a recovery of back pay and does not include plenary compensatory or punitive damages. *Patterson v. McLean Credit Union*, —— U.S. ——, —— n. 4, 109 S.Ct. 2363, 2375 n. 4, 105 L.Ed.2d 132, 154 n. 4 (1989). The policy of Congress, however, is that nothing in Title VII "shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State or political subdivision of a State...." 42 U.S.C. § 2000e–7. Thus, a state's expansion of abusive discharge to cover

status discrimination is neither barred nor preordained by federal law.

The question to be decided by this Court is substantially like that which was before the Supreme Court in *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). The plaintiff, a federal employee who alleged that he had been demoted in retaliation for exercising his first amendment right to free speech, sought recognition of a new, nonstatutory damage remedy to vindicate that right. Applying statutory remedies the Civil Service Commission had ordered back pay and reinstatement of the plaintiff to his former grade. The Supreme Court assumed that the plaintiff's first amendment rights had been violated. It further assumed that the civil service remedies were not as effective as an individual damages remedy and would not fully compensate the plaintiff for the harm he had suffered. The Court then distilled from its cases the following approach to decision:

> "The question is not what remedy the [C]ourt should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy for violations of employees' First Amendment rights."

*Id.* at 388, 103 S.Ct. at 2416–17, 76 L.Ed.2d at 664. Judicial power to create a tort "is to be exercised in the light of relevant policy determinations made by the [legislative branch]." *Id.* at 373, 103 S.Ct. at 2409, 76 L.Ed.2d at 654. The factors involved in the evaluation in *Bush* included costs in terms of money and time, the effects on discipline, morale and efficiency and the loss of information about

government operations. The Court declined to create the new, substantive liability because it was "convinced that Congress [was] in a better position to decide whether or not the public interest would be served by creating it." *Id.* at 390, 103 S.Ct. at 2417, 76 L.Ed.2d at 665.

As cases arise before this Court presenting various public policies as potential bases for invoking abusive discharge, this Court must perform a function much like that of determining whether to recognize a new tort. *Bush* recognizes that that judicial determination does not isolate the legislative remedy from the public policy goal and does not consider the latter in a vacuum.

By 1977, when Maryland added remedies to the employment discrimination subtitle of Art. 49B, it had become well established in the United States Courts of Appeal that Title VII did not permit general compensatory or punitive tort damages for prohibited employment discrimination. *See Richerson v. Jones,* 551 F.2d 918 (3d Cir.1977); *Pearson v. Western Elec. Co.,* 542 F.2d 1150 (10th Cir.1976); *Russell v. American Tobacco Co.,* 528 F.2d 357 (4th Cir.1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1666, 48 L.Ed.2d 176 (1976); *EEOC v. Detroit Edison Co.,* 515 F.2d 301 (6th Cir.1975), *vacated and remanded on other grounds,* 431 U.S. 951, 97 S.Ct. 2668, 53 L.Ed.2d 267 (1977). The General Assembly similarly limited the remedy for employment discrimination under Art. 49B to equitable relief, including back pay, as is apparent from a comparison of Art. 49B to Title VII.

Section 11(e) of Art. 49B, as amended by Ch. 937 of the Acts of 1977, provides:

"If the respondent is found to have engaged in or to be engaging in an unlawful employment practice charged in the complaint, the remedy may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief that is deemed appropriate. The award of

monetary relief shall be limited to a two-year period, except that such two-year period shall not apply to losses incurred between the time of the Commission's final determination and the final determination by the circuit court or higher appellate court, as the case may be. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the monetary relief otherwise allowable."

42 U.S.C. § 2000e–5(g) (1976) reads in relevant part:

"If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable."

The legislative history of Ch. 937 of the Acts of 1977 further demonstrates that the General Assembly directly rejected general compensatory damages for violations of Art. 49B's employment provisions. In the 1976 General Assembly the Legislative Council had proposed amendments to Art. 49B which were introduced as Senate Bill 288. That bill would have provided in § 14(h) of Art. 49B:

"(3) If the unlawful discriminatory acts or practices are unlawful employment practices, the order may also in-

clude an award of actual damages to the complainant or other person injured by such acts or practices for wages lost due to the acts or practices up to a maximum of two years' wages.

"(4) The order may also direct that the general counsel, in the name of the Commission and for the benefit of the complainant or other person injured by the unlawful discriminatory acts or practices, [ ] institute litigation in the appropriate court of the county in which the acts or practices occurred for an *award of actual damages, other than lost wages awarded under paragraph (3)* of this subsection, from the respondent in order to remedy the effects of such acts or practices. After giving the respondent an opportunity to be heard, the court may make such an award of damages. The damages allowed by this paragraph are damages for injuries proximately caused by the respondent's discriminatory acts or practices."

Legislative Council of Md., *Report to the Gen. Assembly of 1976,* at 85–86 (1975) (emphasis added). Senate Bill 288 of 1976 did not pass.

Another bill of the 1976 session, Senate Bill 569, would have given the HRC power to award "compensatory and punitive damages," including damages for "pain of mental anguish and humiliation." Senate Bill 569 received an unfavorable report from the Constitutional and Public Law Committee.

The Interim Legislative Policy Committee, Joint Subcommittee on the HRC, proposed a bill introduced in the 1977 Session as House Bill 458. In relevant part it would have provided:

"The Commission may require payment of monetary damages in cases involving discrimination in employment. In addition the Commission may provide other nonmonetary relief to victims of discrimination. The monetary award shall be limited to direct financial loss resulting from employment."

1977 Laws of Maryland, at 3556–57. The quoted language was stricken from the bill and the language taken from Title VII, set forth above, was inserted in its place. *Id.*

Whether the remedies for employment discrimination under Art. 49B should be supplemented by general compensatory and punitive tort damages raises questions which affect the entire legislative scheme. Professor Larsen has pointed out that

"[t]he use of discrimination laws as the basis for a public policy exception has the potential to expand greatly the available remedies. Furthermore, because of this expansion of remedies, it would seem that employees would be encouraged to circumvent or ignore the very statutes on which the public policy exception is based. Why should a discharged employee go to the trouble of filing a claim with a state agency and/or the EEOC before bringing an action for back pay, when disregarding those procedures may bring the possibility of recovering not only lost wages but also a healthy sum in punitive damages?"

1 L. Larsen, *Unjust Dismissal* § 6.10[6][e], at 6–91 (1989).

### III

In cases of discharge motivated by employment discrimination prohibited by Title VII and Art. 49B the statutes create both the right, by way of an exception to the terminable at-will doctrine, and remedies for enforcing that exception. Thus, the generally accepted reason for recognizing the tort, that of vindicating an otherwise civilly unremedied public policy violation, does not apply. Further, allowing full tort damages to be claimed in the name of vindicating the statutory public policy goals upsets the balance between right and remedy struck by the Legislature in establishing the very policy relied upon.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.

ADKINS, J., dissents in which ELDRIDGE and COLE, JJ., join.

ADKINS, Judge, dissenting.

Because I cannot agree that "[a]busive discharge is inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by a civil remedy," 316 Md. at 605, 561 A.2d at 180, I respectfully dissent. The majority's conclusion is required neither by this Court's decision in *Adler v. American Standard Corp.*, 291 Md. 31, 432 A.2d 464 (1981), nor by the existence of limited administrative remedies in the federal and Maryland statutes dealing with sex discrimination.

I.

In *Adler*, we recognized "a cause of action for abusive or wrongful discharge by an employer of an at will employee when the motivation for the discharge contravenes some clear mandate of public policy...." 291 Md. at 47, 432 A.2d at 473. We noted that sources for public policy include Constitutions, legislative enactments, prior judicial decisions, or administrative regulations. *Id.* at 45, 432 A.2d at 472. *See, e.g., Adler v. American Standard Corp.*, 538 F.Supp. 572 (D.Md.1982); 830 F.2d 1303 (4th Cir.1987) (discharge resulting from employee's threatened exposure of employer's violations of federal tax laws violates clear mandate of public policy); *Ewing v. Koppers Co.*, 312 Md. 45, 537 A.2d 1173 (1988) (discharge of employee in retaliation for employee's filing a workers' compensation claim violates clear mandate of Maryland public policy); *Moniodis v. Cook*, 64 Md.App. 1, 494 A.2d 212, *cert. denied,* 304 Md. 631, 500 A.2d 649 (1985) (discharge resulting from refusal to submit to a polygraph examination violates clear mandate of Maryland public policy).

The Court of Special Appeals was correct when it recognized that *Adler* focused on what we perceived to be a void in the law. *Makovi v. Sherwin–Williams Co.*, 75 Md.App. 58, 64, 540 A.2d 494, 497 (1988). It was also correct when it stated that *Adler* contains "no clear expression ..., one way or the other, as to whether the common law action it

recognized is preempted or otherwise unavailable where an alternative statutory remedy exists." *Id.* But those accurate statements do not lead inevitably to the conclusion that any statutory remedy for a clear violation of public policy necessarily precludes a common law action for abusive discharge based on that same violation. In *Adler*, we surely did not preclude the availability of the common law action as an alternative to the more limited relief typically available through a statutory administrative scheme. Instead, we recognized, without express limitation, that an at-will employee can maintain an action for abusive discharge "when the motivation for the discharge contravenes some clear mandate of public policy...." *Adler*, 291 Md. at 47, 432 A.2d at 473. It is noteworthy that we made specific reference to the employment discrimination provisions of Article 49B, but never suggested that a common law action would not lie for violation of the public policy they embody. *See id.* at 35, 432 A.2d at 467.

Indeed, when we extended the *Adler* doctrine to contractual employees, Judge McAuliffe, for the Court, pointed out that "the public policy component of the tort is significant, and recognition of the availability of this cause of action to all employees, at will and contractual, will foster the State's interest in deterring particularly reprehensible conduct." *Ewing*, 312 Md. at 49, 537 A.2d at 1175. There is a strong emphasis, in other words, on the policy-violating conduct of the employer; the nature of that conduct weighs heavily in the balance when the availability of the common law doctrine is in question. What is more, while we observed in *Ewing* that the tort of abusive discharge "is not intended to reach every wrongful discharge," we again recognized only one factor respecting its availability: that "the discharge contravene [ ] some clear mandate of public policy." *Id.*

*Ewing* further illustrates that the existence of *some* statutory remedy will not bar a common law abusive discharge action. The problem in that case was a discharge allegedly in retaliation for the filing of a claim for workers' compensation. That sort of retaliation is a criminal offense.

Md.Code (1985 Repl.Vol.), Art. 101, § 39A. But we did not suggest that the existence of that "remedy" would bar a common law action by Ewing. The criminal sanction was no remedy for Ewing. Explaining that the wrong asserted by Ewing "contravenes the clear mandate of Maryland public policy" we declared that "our perception of the magnitude of the public interest in preserving the full benefits of the workers' compensation system to employees, and deterring employees from encroaching upon those rights, is ... strong." 312 Md. at 50, 537 A.2d at 1175. As a consequence, "[t]he question ... is not whether a cause of action for abusive discharge generally exists in favor of union employees—it does." *Id.* A statutory remedy that provides no direct relief to the discharged employee is no bar to an *Adler* tort action. *Adler* should not be viewed as narrowly as the majority and the Court of Special Appeals read it.

## II.

Sex discrimination in employment contravenes clear mandates of public policy. That policy is declared in various enactments, including Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e-2, 2000e-3)[1] and the Maryland Fair Employment Practices Law (Md.Code (1986 Repl.Vol., 1988 Cum.Supp.), Art. 49B, §§ 14–18).[2] The policy is rein-

---

1. Relevant to this case, § 2000e-2(a) provides:
   (a) It shall be an unlawful employment practice for an employer—
   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

2. Article 49B, § 14 declares it "to be the policy of the State of Maryland ... to assure all persons equal opportunity in receiving employment ... regardless of race, color, religion, ancestry or nation-

forced by Article 46 of the Maryland Declaration of Rights.[3] Thus, it would appear that the only prerequisite to a common law abusive discharge, at least the only one prescribed by *Adler*, is met by the allegations of Makovi's complaint. Ironically, however, the majority makes the statutes that establish the public policy, allegedly contravened here, the means of depriving Makovi of the benefits of an abusive discharge action. It does so by limiting the scope of the public policy to the statutory remedies provided by Title VII and Article 49B. These remedies become, in the majority view, the exclusive means of vindicating the declared policy against sex discrimination in employment.

In reaching this result by that route, the majority disclaims any reliance on notions of legislative preemption, exhaustion of administrative remedies, or the doctrine of primary jurisdiction. 316 Md. at 609, 561 A.2d at 182. It could hardly do otherwise in light of our decisions in *Md.-Nat'l Cap. P. & P. Comm'n v. Crawford*, 307 Md. 1, 511 A.2d 1079 (1986), and *National Asphalt v. Prince George's Co.*, 292 Md. 75, 437 A.2d 651 (1981). But the majority's exclusivity approach is functionally the same as though it applied the concept of legislative preemption. The history of Title VII and the pertinent portions of Article 49B belie that line of reasoning.

As the majority demonstrates, Title VII and Article 49B are closely related, the employment provisions of the latter being modeled on the former. 316 Md. at 608, 561 A.2d at 181. *See Burnett v. Grattan*, 468 U.S. 42, 51, 104 S.Ct. 2924, 2930, 82 L.Ed.2d 36, 45 (1984) (recognizing that employment discrimination provisions of Article 49B are modeled on Title VII); *State Comm'n on Human Rel. v. Baltimore*, 280 Md. 35, 371 A.2d 645 (1977) (relying almost

---

al origin, sex, age, marital status, or physical or mental handicap ..., and to that end to prohibit discrimination in employment by any person...."

**3.** Article 46 proclaims: "Equality of rights under the law shall not be abridged or denied because of sex."

exclusively on provisions of Title VII in construing § 18 of Article 49B); *see also Willis v. State,* 302 Md. 363, 375, 488 A.2d 171, 178 (1985) (two sets of statutes which are *in pari materia* should be interpreted in similar fashion). Cases dealing with Title VII demonstrate that its limited administrative remedies are not exclusive with respect to one who charges employment discrimination, nor do they mark the outer boundaries of relief for one who has been harmed by gender bias in employment.

### A.

In *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court was asked to

decide under what circumstances, if any, an employee's statutory right to a trial *de novo* under Title VII may be foreclosed by prior submission of his claim to final arbitration under the nondiscrimination clause of a collective-bargaining agreement.

415 U.S. at 38, 94 S.Ct. at 1015, 39 L.Ed.2d at 152. An employee had submitted a grievance, alleging racial discrimination, both to arbitration and to the EEOC. The arbitrator found that the employee "had been 'discharged for just cause.' " *Id.* at 42, 94 S.Ct. at 1017, 39 L.Ed.2d at 155. Thereafter, the EEOC determined that there was no reasonable cause to believe there was racial discrimination and notified the claimant of his right to sue in the United States District Court. *Id.* at 43, 94 S.Ct. at 1017, 39 L.Ed.2d at 155. The employee did file a private suit; the District Court granted the employer's motion for summary judgment, holding that the claim had been resolved adversely to the claimant by the arbitrator and that having decided to pursue the remedy under his collective-bargaining agreement, the claimant was bound by the arbitrator's decision and thus precluded from suing under Title VII. *Id.*

In order to decide the issue before it, the Supreme Court had to determine whether Congress, in enacting Title VII, intended that the remedy under Title VII be exclusive or

independent of other available remedies for employment discrimination. Justice Powell, writing for the Court, noted the plenary powers federal courts have in securing enforcement of Title VII and explained the importance of the private right of action as "an essential means of obtaining judicial enforcement of Title VII" and as a means of allowing a private litigant to vindicate "the important congressional policy against discriminatory employment practices." *Id.* at 45, 94 S.Ct. at 1018, 39 L.Ed.2d at 156.

The Court examined the legislative history behind Title VII. That history revealed that Congress "considered the policy against discrimination to be of the 'highest priority.' " *Id.* at 47, 94 S.Ct. at 1019, 39 L.Ed.2d at 158. Citing 42 U.S.C. §§ 1981, 1983, the Court noted that various legislative enactments pertaining to discrimination intended to "accord parallel or overlapping remedies against discrimination." *Id.* at 47, 47 n. 7, 94 S.Ct. at 1019, 1019 n. 7, 39 L.Ed.2d at 158, 158 n. 7 [footnote omitted]. In fact, the Senate in 1964 defeated an amendment to Title VII which would have made Title VII the exclusive federal remedy for employment discrimination. *See id.* at 48 n. 9, 94 S.Ct. at 1019–1020 n. 9, 39 L.Ed.2d at 158 n. 9, *see also Keller v. Prince George's County,* 827 F.2d 952, 959–960 (4th Cir. 1987) (discussing legislative history behind 1972 amendments to Title VII and noting that three proposals to make Title VII and exclusive remedy were rejected by the Senate). Also, the Senate Committee Report on the Civil Rights Act of 1964 explained that Title VII was not intended to " 'affect existing rights granted under other laws.' " *Id.*

The Court found that despite their "distinctly separate nature ... no inconsistency results from permitting [the contractual and statutory rights] to be enforced in their respectively appropriate forums." *Id.,* 415 U.S. at 50, 94 S.Ct. at 1020, 39 L.Ed.2d at 159. In holding that Title VII afforded the claimant independent remedies, the Court noted that the policy underlying Title VII would be promoted by the enforcement of discrimination claims in different

forums—in *Alexander,* arbitration of the contract claim and the court action pursuant to Title VII. *Id.* at 50–51, 94 S.Ct. at 1021, 39 L.Ed.2d at 159. Thus, the claimant was entitled to *de novo* review of his claim in the district court. *Id.* at 59–60, 94 S.Ct. at 1025, 39 L.Ed.2d at 165.

In *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Court was presented with the issue of whether the timely filing of a Title VII claim tolled the running of the statute of limitations to an action, based on the same facts, under 42 U.S.C. § 1981. 421 U.S. at 455, 95 S.Ct. at 1717, 44 L.Ed.2d at 298. The Court held that the § 1981 claim and the Title VII claim were independent remedies; "[d]espite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies. . . ." *Id.* at 459, 95 S.Ct. at 1719, 44 L.Ed.2d at 301. Further, Congress recognized that the dual remedies are coextensive and that their procedures augment each other. *Id.*

Thus, because the two remedies were independent, the Court held that the limitations period for the § 1981 claim was not tolled by the filing of the Title VII claim. *Id.* at 466, 95 S.Ct. at 1723, 44 L.Ed.2d at 305; *see also Patterson v. McLean Credit Union,* —— U.S. ——, ——, 109 S.Ct. 2363, 2375, 105 L.Ed.2d 132, —— (1989) (recognizing potential for overlap of claims arising under both Title VII and § 1981); *International Union of Elec. Workers v. Robbins & Myers,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) (grievance procedure under collective-bargaining agreement and Title VII are independent remedies); *Brown v. General Serv. Admin.,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (Title VII is not exclusive remedy for private employees, but legislative history is clear that Title VII is exclusive remedy for federal employees); *Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1573–1576 (5th Cir. 1989) (remedies under Title VII and § 1983 are independent when employer's unlawful conduct encroaches upon rights created by Title VII and first amendment); *Zombro v.*

*Baltimore City Police Dep't,* 868 F.2d 1364, 1376 (4th Cir.1989) (Murnaghan, J., concurring in part and dissenting in part) ("... Congress clearly believed that the need to retain a variety of methods to combat discrimination outweighed the risk that multiple remedies would undermine Title VII's comprehensive enforcement mechanism"); *Keller v. Prince George's County, supra,* (remedies under Title VII and § 1983 are independent); *Napoleon v. Xerox Corp.,* 656 F.Supp. 1120, 1121–1124 (D.Conn.1987) (remedies under Title VII and § 1981 are independent); *Hall v. Board of County Comm'rs of Frederick County,* 509 F.Supp. 841 (D.Md.1981) (Title VII and state contract claims are independent remedies, notwithstanding that same circumstances gave rise to both claims); *Md.–Nat'l Cap. P. & P. Comm'n v. Crawford, supra,* (Title VII remedy does not preclude state or local government employee from maintaining § 1983 claim); *see generally* Greenbaum, *Toward a Common Law of Employment Discrimination,* 58 Temp.L.Q. 65, 88–94 (1985) (discussing legislative intent behind Title VII and concluding that it was not intended to be an exclusive remedy). *But see Great Am.Fed. S. & L. Ass'n v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) (no independent remedy for employment discrimination exists under § 1985(3) because that section creates no "right," only a remedy for the violation of rights designated in other statutes).[4]

---

4. Many cases holding that a statutory remedy for discrimination is exclusive can be distinguished because they often involve federal law other than Title VII, *i.e.,* the Age Discrimination in Employment Act (ADEA) or cursory determinations of the legislative intent embodied in particular state statutes. *See, e.g., Zombro v. Baltimore City Police Dep't,* 868 F.2d 1364 (4th Cir.1989) (the ADEA, unlike Title VII, provides exclusive remedy for discrimination); *Blum v. Witco Chem. Corp.,* 829 F.2d 367, 376–377 (3d Cir.1987) (New Jersey statutory law and ADEA provide exclusive remedy for age discrimination); *Bonham v. Dresser Indus., Inc.,* 569 F.2d 187 (3d Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978) (Pennsylvania statutory law provides exclusive remedy for age discrimination); *Napoleon v. Xerox Corp.,* 656 F.Supp. 1120, 1125 (D.Conn.1987) (Connecticut statutory law provides exclusive remedy for race discrimination); *Guevara v. K–Mart Corp.,* 629 F.Supp. 1189 (S.D.W.Va.1986) (West Virginia statu-

The Court of Appeals for the Eighth Circuit, in *Lucas v. Brown & Root, Inc.*, 736 F.2d 1202 (8th Cir.1984), determined that a person alleging sex discrimination in employment may sue in tort for wrongful discharge. The court held that Title VII does not preclude such an action because employers are not exempt from liability or penalty " 'provided by any *present or future law* of any State....' " 736 F.2d at 1206 (quoting 42 U.S.C. § 20003–7) [emphasis added].[5]

From these decisions it is clear that Title VII contemplates the use of multiple remedies to cure instances of employment discrimination and that these remedies may include common law or statutory remedies sounding in contract or tort.[6] I agree with the United States Court of Appeals for the Fourth Circuit:

---

tory law provides exclusive remedy for national origin discrimination); *Greene v. Union Mut. Life Ins. Co.*, 623 F.Supp. 295, 299 (D.Me.1985) (Maine statutory law provides exclusive remedy for age discrimination); *Strauss v. A.L. Randall Co.*, 144 Cal.App.3d 514, 194 Cal.Rptr. 520 (1983) (California statutory law provides exclusive remedy for age discrimination); *Melley v. Gillette Corp.*, 19 Mass.App. 511, 475 N.E.2d 1227 (1985), *aff'd*, 397 Mass. 1004, 491 N.E.2d 252 (1986) (Massachusetts statutory law provides exclusive remedy for age discrimination); *Howard v. Dorr Woolen Co.*, 120 N.H. 295, 414 A.2d 1273 (1980) (New Hampshire statutory law and ADEA are exclusive remedies for age discrimination); *Bourque v. Wausau Hosp. Center*, 145 Wis.2d 589, 427 N.W.2d 433 (Ct.App.1988) (Wisconsin statutory law provides exclusive remedy for retaliatory discharge and age discrimination); *Allen v. Safeway Stores Inc.*, 699 P.2d 277, 283 (Wyo.1985) (Wyoming statutory law provides exclusive remedy for sex discrimination).

5. The majority attempts to explain *Lucas* on the ground that the plaintiff's ability to sue for wrongful discharge was based on the fact that she was being forced into prostitution in violation of a criminal statute, 316 Md. at 620, 561 A.2d at 187. This is unpersuasive. The plaintiff alleged she was a victim of *quid pro quo* sexual harassment, a violation of Title VII. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Thus, she was allowed to bring a wrongful discharge action despite the existence of a civil remedy under Title VII.

6. The Supreme Court has not had occasion to address a case involving a party asserting a common law abusive discharge action. As we have noted, in *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011,

A remedial focus on the problem of employment discrimination reveals that a battery of remedies is required to combat entrenched discrimination. Indeed, Congress recognized in adopting Title VII that no single approach to the problem of employment discrimination could be a panacea. *See Alexander v. Gardner–Denver Co.,* 415 U.S. [at 47–49, 94 S.Ct. at 1019–1020, 39 L.Ed.2d at 157–158].

*Keller v. Prince George's County,* 827 F.2d at 957 [footnote omitted].

### B.

The nonexclusivity interpretation given to Title VII applies with equal force to Article 49B. As Judge Eldridge has noted for the Court, its provisions dealing with employment discrimination are contained in "five relatively brief sections ... which do not comprehensively cover the entire field." *National Asphalt,* 292 Md. at 79, 437 A.2d at 653; *see also Equitable Life v. State Comm'n,* 290 Md. 333, 336–338, 430 A.2d 60, 62–63 (1981) (Human Relations Commission and Insurance Commissioner have concurrent jurisdiction over alleged unfair discriminatory practices by insurers); *Equitable Trust Co. v. State Comm'n,* 287 Md. 80, 85–87, 411 A.2d 86, 89–90 (1980) (similar conclusion with respect to Human Relations Commission and Bank Commissioner). The legislature, Judge Eldridge explained, did not intend to preempt the field of employment discrimination. *National Asphalt,* 292 Md. at 79–80, 437 A.2d at 653–654.

We expanded on that same theme in *Md.–Nat'l Cap. P. & P. Comm'n v. Crawford, supra.* In that case Ms. Crawford asserted that, by denying her an employment transfer,

---

39 L.Ed.2d 147 (1974), the Court held that Title VII did not preclude a contract action arising in the context of a collective bargaining agreement. *See also Hall v. Board of County Comm'rs of Frederick County,* 509 F.Supp. 841, 850 (D.Md.1981) (existence of Title VII remedy does not preclude common law contract action, arising from same circumstances). Because many tort and contract remedies have their genesis in the common law, we perceive no reason for treating a tort action differently from a contract action in this context.

her employer violated the Equal Protection Clause of the United States Constitution. She filed an action under 42 U.S.C. § 1983. We held, among other things, that she was not required to exhaust her remedies before the Commission. 307 Md. at 30–31, 511 A.2d at 1094.

En route to that conclusion, Judge Eldridge, for the Court, first made clear that "[n]othing in the 1965 statute [initially adopting the employment discrimination provisions of Article 49B], in the then existing provisions of Article 49B, or in any subsequent enactments by the General Assembly, remotely indicates that the administrative enforcement machinery in Article 49B must be invoked prior to pursuing a specific independent judicial remedy." 307 Md. at 24, 511 A.2d at 1090.[7] "Moreover," he continued,

---

7. The lack of an express exclusivity provision in Article 49B distinguishes a number of the cases cited by Sherwin–Williams, some of which also were cited by the Court of Special Appeals. For example, courts have read the Pennsylvania Human Relations Act to have an express exclusivity provision, and a number of cases reaching the result here sought by Sherwin–Williams have relied on that provision in whole or in part. *See Wolk v. Saks Fifth Ave., Inc.,* 728 F.2d 221 (3d Cir.1984); *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910 (3d Cir.1982); *Bonham v. Dresser Indus., Inc.,* 569 F.2d 187 (3d Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *McFadden v. Burton,* 645 F.Supp. 457 (E.D.Pa.1986); *Freeman v. Calma Co.,* 41 Fair Empl. Prac. Cas. (BNA) 1287, 1986 WL 8260 (E.D.Pa.1986); *Shaffer v. National Can Corp.,* 565 F.Supp. 909 (E.D.Pa.1983). Recently, the Supreme Court of Pennsylvania in *Clay v. Advanced Computer Applications, Inc.,* —— Pa. ——, 559 A.2d 917 (1989), agreed, holding that the Pennsylvania Act is the exclusive remedy for one aggrieved of sexual harassment and discrimination, a result "indicated by express provisions of the [Act], as well as established judicial interpretations of legislative intent." —— Pa. at ——, 559 A.2d at 919. The Illinois Human Rights Act has been read in the same way, *Mein v. Masonite Corp.,* 109 Ill.2d 1, 92 Ill.Dec. 501, 485 N.E.2d 312 (1985).

The General Assembly of Maryland has demonstrated that it knows how to express the exclusivity of a statutory remedy. *See McCullough v. Wittner,* 314 Md. 602, 552 A.2d 881 (1989) (Md.Ann.Code (1988 Cum.Supp.), Art. 41, § 4–102.1(*1*) expressly provides that inmate is not entitled to file grievance in court until administrative remedy is exhausted); *Prince George's Co. v. Blumberg,* 288 Md. 275, 418 A.2d 1155 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981) (Md.Ann.Code (1987 Repl.Vol.), Art. 25A, § 5(U) expressly provides exclusive remedy for revocation of building permit); *McLean Contracting Co. v. MTA,* 70 Md.App. 514, 521 A.2d 1251, *cert. denied,*

the practical ramifications strongly suggest that the Legislature had no such intent. For example, under the position urged by the amici in this case, where an act of employment discrimination because of race, color, religion, or national origin constitutes a clear breach of an employment contract, the party discriminated against would not be able to maintain a breach of contract action in court unless he had first invoked and exhausted the time consuming and multi-step administrative procedure before the Human Relations Commission.... Unlike other situations involving the relationship between independent judicial actions and administrative proceedings (*cf. Bd. of Ed. for Dorchester Co. v. Hubbard* [305 Md. 774, 506 A.2d 625 (1986)]), we very much doubt that the Legislature intended such results.

307 Md. at 24, 511 A.2d at 1090–1091. If a common law contract action based on illegal discrimination can be maintained without problems of exhaustion of administrative remedies or primary jurisdiction, the same should be so as to a common law tort action similarly based when the relief sought is not that encompassed by a specific statutory remedy. In both cases the basic reason is the same: lack of legislative intent to require that the administrative remedy be either exclusive or primary. *See Md. Nat'l Cap. P. & P. v. Wash. Nat'l Arena,* 282 Md. 588, 600, 386 A.2d 1216, 1225 (1978). And this lack of preclusive intent is particularly apparent when the administrative scheme is of limited comprehensiveness. *Crawford,* 307 Md. at 25–27, 511 A.2d at 1091–1092.

---

310 Md. 130, 527 A.2d 51 (1987) (legislative intent of Md.Ann.Code (1988 Repl.Vol.), State Fin. & Proc. §§ 15–201 *et seq.* is clear that administrative remedy for contract appeal is exclusive); Md.Ann.Code (1988 Cum.Supp.), Art. 101, § 36 (providing exclusive remedy for workers' compensation "in lieu of any and all rights of action whatsoever ..."); *see also Pratt v. Delta Air Lines, Inc.,* 675 F.Supp. 991 (D.Md.1987) (abusive discharge action may not be maintained based on violation of ERISA because federal law expressly precludes such action).

The remedial scheme adopted in Article 49B's employment discrimination provision is, as I have noted, not comprehensive. *See Crawford,* 307 Md. at 26, 511 A.2d at 1092; *see also Burnett v. Grattan, supra,* 468 U.S. at 53, 104 S.Ct. at 2931, 82 L.Ed.2d at 47 (recognizing the limited remedial authority of the Commission pursuant to Article 49B). A common law abusive discharge action seeks relief essentially of a different kind and much more extensive than any remedy afforded by Article 49B. Moreover, Makovi's claim is not grounded entirely upon the provisions of that article. That distinguishes this case from *Dillon v. Great Atl. & Pac. Tea Co.,* 43 Md.App. 161, 403 A.2d 406 (1979).

In *Dillon,* the plaintiff sued a company which had refused to hire him. The plaintiff alleged handicap discrimination. The Court of Special Appeals held that Article 49B did not create a private cause of action of that type; the administrative remedy had to be followed. 43 Md.App. at 167, 403 A.2d at 409; *see also Crawford,* 307 Md. at 25 n. 10, 511 A.2d at 1091 n. 10. Makovi, however, is not asserting a private cause of action created by Article 49B. Her suit is based on a common law action, recognized by this Court in *Adler,* one element of which involves violation of the clear mandate of the public policy established by Article 49B and by Article 46 of the Declaration of Rights. Given the established absence of legislative preemption and related doctrines, as well as the established availability of diverse remedies for employment discrimination, it is difficult for me to follow the majority's argument that the statute establishing the policy against employment discrimination itself operates to bar the common law remedy.

There are, of course, cases holding that Article 49B has exactly that effect in the context of an *Adler* claim. These include *Parlato v. Abbott Laboratories,* 850 F.2d 203 (4th Cir.1988) (per curiam) (age and race discrimination); *Butler v. Westinghouse Elec. Corp.,* 690 F.Supp. 424 (D.Md.1987) (race discrimination); *Chekey v. BTR Realty, Inc.,* 575 F.Supp. 715 (D.Md.1983) (age discrimination); *MacGill v.*

*Johns Hopkins Univ.*, 33 Fair Empl.Prac.Cas. (BNA) 1254 (D.Md.1983) (age discrimination); and *Vasques v. National Geographic Soc'y*, 34 Fair Empl.Prac.Cas. (BNA) 295 (D.Md.1982) (national origin discrimination). All of these cases, however, stem from a misreading of Maryland law.

*Vasques*, the earliest of them, relied to some degree on several of the cases interpreting Pennsylvania law—cases which I have already distinguished in note 7, *supra*. 34 Fair Empl.Prac.Cas. at 297. More fundamentally, though, it purported to follow *Soley v. State Comm'n on Human Relations*, 277 Md. 521, 356 A.2d 254 (1976), which the trial court read as holding "that the statutory remedy under Article 49B is exclusive." *Id.* at 297. *MacGill* also looked to the federal cases applying Pennsylvania law as well as to *Dillon*, but like *Vasques*, depended more heavily on *Soley*. 33 Fair Empl.Prac.Cas. at 1258. Essentially the same is true of *Chekey* (which also cited *MacGill*). *Chekey*, 575 F.Supp. at 717. *Butler* cited *Chekey*. 690 F.Supp. at 429. When the issue reached the Fourth Circuit in *Parlato*, that court cited *Soley* and *Dillon*, and the United States District Court cases we have just discussed. 850 F.2d at 205–206. But the federal court of appeals, absent a squarely on-point decision from this Court, found the Court of Special Appeals' opinion in *Makovi* controlling. 850 F.2d at 206–207.[8]

I have already explained why this case is unlike *Dillon*. The other Maryland case underlying all of these federal decisions is *Soley*. With all due respect, I believe the federal courts have read *Soley* too broadly.[9]

---

8. The United States District Court for the District of Maryland found Article 49B to be exclusive in the context of a claim of discriminatory constructive discharge. *Glezos v. Amalfi Ristorante Italiano, Inc.*, 651 F.Supp. 1271 (D.Md.1987). That case, too, relied heavily on *Soley v. State Comm'n on Human Relations*, 277 Md. 521, 356 A.2d 254 (1976), and *Dillon v. Great Atl. & Pac. Tea Co.*, 43 Md.App. 161, 403 A.2d 406 (1979). 651 F.Supp. at 1276.

9. The Court of Special Appeals apparently agrees. *See Makovi v. Sherwin–Williams*, 75 Md.App. 58 n. 3, 540 A.2d 494, 498 n. 3 (1988).

In *Soley*, the Maryland Commission on Human Relations issued subpoenas to the plaintiffs pursuant to its investigatory authority granted by Article 49B. *See* Art. 49B, § 10(a). The plaintiffs filed suit in the circuit court seeking a declaratory judgment to the effect that the subpoenas were " 'illegal and invalid' " because the Commission lacked the authority to issue them. 277 Md. at 523, 356 A.2d at 256. We held that the plaintiffs were not entitled to declaratory relief at that point; they had to exhaust their administrative remedies available under Article 49B. *Id.* at 525–528, 356 A.2d at 257–258. This decision was not based on the comprehensive or noncomprehensive nature of Article 49B, but on the mandate of § 3–409(b) of the Courts and Judicial Proceedings Article (1984 Repl.Vol.) that declaratory relief is not available when another statute "provides a special form of remedy." We held that the remedy under Article 49B was such a "special form of remedy" in the context of a declaratory judgment action. *Id.; cf. Wash. Nat'l Arena, supra* (declaratory relief available in tax dispute because court shared concurrent power with tax agencies to construe contractual provisions). The *Soley* decision, however, does not reflect upon the comprehensiveness of Article 49B, in the context of the case presently before us.

Thus, I strongly disagree that the policy against employment discrimination is restricted by and to the administrative remedies provided by Title VII and Article 49B. Nothing in the legislative history of pertinent portions of Article 49B supports that reasoning.

We are told, for example, that to allow Makovi to seek "full tort damages ... in the name of vindicating the statutory public policy goals [would upset] the balance between right and remedy struck by the Legislature in establishing the very policy relied upon." 316 Md. at 626, 561 A.2d at 190. As I have already explained, whatever balancing the legislature engaged in in no way precluded the common law remedy Makovi now seeks. Had preclusion of a tort remedy been the legislative goal, it would

have preempted other remedies, either expressly or by implication. *See* note 7, *supra.* Even the majority does not argue that this was done. And the kind of balancing and compromise that occurs in the adoption of provisions like Article 49B is well illustrated by the background of Ch. 937, Acts of 1977, discussed by the majority; 316 Md. at 624, 561 A.2d at 189.

As the majority notes, SB 288 of 1976 would have permitted the Human Relations Commission to award actual damages caused by employment discrimination in addition to backpay. The bill did not pass. Indeed, it is said to have "created a furor in hearings before the Senate Constitutional and Public Law Committee." Reports of Legislative Committees to 1977 General Assembly, 1976 Interim Legislative Policy Committee, *Report of the Joint Committee on the Human Relations Commission* at 242. But as examination of materials (letters from opponents of the bill) on file at the Department of Legislative Reference shows, the "furor" was produced, not by those who objected to the damages provision, but by those who opposed provisions of the bill that would have curbed severely the Commission's administrative and investigative powers.

House Bill 458 of 1977 (which became Ch. 937) originally contained a damages provision, but that was deleted and language taken from Title VII substituted. None of this requires one to conclude that the General Assembly carefully balanced a civil administrative remedy against tort damages. It might have wished to do nothing more than track Title VII, which does not (as I have shown) preclude common law actions. It might have been reluctant to allow an administrative agency to award tort damages.[10] But even were that the legislative goal, this does not mean that the legislature meant to prevent the judicial award of damages, or that it established the anti-discrimination policy only to

---

10. A reluctance to permit an administrative agency to award tort damages also may explain the failure of SB 569 of 1976. *See Makovi,* 316 Md. at 625, 561 A.2d at 190.

the extent that it could be vindicated by a limited administrative remedy.

### III.

Makovi alleges that her employer discriminated against her because of her sex. That sort of discrimination violates a clear mandate of public policy. Therefore, Makovi has alleged the existence of the only stated precondition to an *Adler* action.

I conclude that Makovi is entitled to choose between available alternative remedies and may pursue the one she has chosen: a common law action in the Maryland courts.[11] This would not, as Sherwin–Williams asserts, "undermine the legislative framework" of Title VII and Article 49B. The statutory remedies will remain viable alternatives for victims of employment discrimination. For example, an employee hoping to remain with the same employer may find that conciliation is a preferable means of resolving any discriminatory practices.

Conciliation and persuasion through the administrative process, to be sure, often constitute a desirable approach to settlement of disputes based on sensitive and emotional charges of invidious employment discrimination. We recognize, too, that the filing of a lawsuit might tend to deter efforts at conciliation, that lack of success in the legal action could weaken the Commission's efforts to induce voluntary compliance, and that a suit is privately oriented and narrow, rather than broad, in application, as successful conciliation tends to be. But these are the natural effects of the choice Congress [and the General Assembly] has made available to the claimant by its conferring upon him independent administrative and judicial remedies. The choice is a valuable one. Under some

---

11. As to the situation in which a plaintiff situated like Makovi elects to file both an administrative claim and an independent judicial action, see *Md.–Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 31 n. 14, 511 A.2d 1079, 1094 n. 14 (1986).

circumstances, the administrative route may be highly preferred over the litigatory; under others the reverse may be true. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. at 461, 95 S.Ct. at 1720, 44 L.Ed.2d at 302. Also, the remedy available through the administrative process may be more desirable because it sometimes is more expedient and less expensive and because of the administrative agency's expertise in uncovering discriminatory practices. *See* Art. 49B, §§ 9–12 (the Commission investigates discrimination charges; will, if necessary, bring civil action; and is responsible for the enforcement of its orders); *see also Lally v. Copygraphics*, 85 N.J. 668, 672–673, 428 A.2d 1317, 1319 (1981) (per curiam).[12]

The availability of multiple or parallel remedies may deter future discrimination and may assist in the combat against entrenched existing discriminatory practices in employment. The availability of the common law remedy supplements rather than hinders the goals of the statutes. *See, e.g., Johnson v. Railway Express Agency, Inc.*, 421 U.S. at 459, 95 S.Ct. at 1719, 44 L.Ed.2d at 301; *Alexander v. Gardner–Denver Co.*, 415 U.S. at 47–51, 94 S.Ct. at 1019–1021, 39 L.Ed.2d at 157–159; *Keller v. Prince George's County*, 827 F.2d at 957; *Lucas v. Brown & Root, Inc.*, 736 F.2d at 1205–1206. Other courts have ruled similarly. *See, e.g., Broomfield v. Lundell*, 159 Ariz. 349, 767 P.2d 697 (Ct.App. 1988), *review denied*, (Ariz.1989) (sex discrimination); *Rojo v. Kliger*, 209 Cal.App.3d 10, 257 Cal.Rptr. 158 (1989) (sex discrimination); *Holmes v. Haughton Elevator Co.*, 404 Mich. 36, 272 N.W.2d 550 (1978) (age discrimination); *Pom-*

---

**12.** It may not always be true that the administrative remedy is expeditious and inexpensive. At least recent items in the press so suggest. *See After 7 Years, Job Bias Complaint is Still Unresolved,* Baltimore Sun 26 March 1989 at 1A, col. 3; *Justice Denied,* Baltimore Sun 30 March 1989 at 2A, col. 1 (editorial) (both items charge that massive case backlogs in the Human Relations Commission have made the Commission ineffective for a period of years). Thus, the availability of alternative remedies may be important to vindicate the policy against discrimination.

*pey v. General Motors Corp.*, 385 Mich. 537, 189 N.W.2d 243 (1971) (race discrimination); *Lally v. Copygraphics, supra* (New Jersey statute provided a remedy for retaliatory discharge, but common law action will augment the policy behind the statute); *Erickson v. Marsh & McLennan Co.*, 227 N.J.Super. 78, 545 A.2d 812, *cert. granted*, 113 N.J. 640, 552 A.2d 165 (1988) (sex discrimination); *Holien v. Sears, Roebuck and Co.*, 298 Or. 76, 689 P.2d 1292 (1984) (sex discrimination); *Savage v. Holiday Inn Corp.*, 603 F.Supp. 311 (D.Nev.1985) (age and sex discrimination); *see also Scott v. Carter-Wallace, Inc.*, 147 A.D.2d 33, 541 N.Y.S.2d 780 (1989) (discussing N.Y. Exec. Law § 297(9) (Consol.1983), which provides one aggrieved of employment discrimination a choice of either a judicial or administrative remedy).

The common law remedy should be open to victims of employment discrimination because the remedies available under the statutes often

> fail to capture the personal nature of the injury done to a wrongfully discharged employee as an individual and the remedies provided by the statutes [may] fail to appreciate the relevant dimensions of the problem. Reinstatement, back pay, and injunctions [may] vindicate the rights of the victimized group without compensating the plaintiff for such personal injuries as anguish, physical symptoms of stress, a sense of degradation, and the cost of psychiatric care. [In such cases, l]egal as well as equitable remedies are needed to make the plaintiff whole.

*Holien*, 298 Or. at 97, 689 P.2d at 1303–1304; *see also Broomfield v. Lundell*, 159 Ariz. at 756, 767 P.2d at 705 (administrative remedy may, in some cases, be inadequate).[13]

---

13. The majority's reliance on *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), is misplaced. 316 Md. at 622, 561 A.2d at 188. In *Bush*, a federal employee brought suit, alleging that he had been demoted in retaliation for statements he had made about his employer, the National Aeronautics and Space Administration, to the media. The Court held that the plaintiff must pursue a remedy, not in

For the reasons stated, I would reverse the judgment of the Court of Special Appeals.

Judges ELDRIDGE and COLE have authorized me to state that they join in this dissenting opinion.

court, but within "the elaborate remedial system ... constructed" by Congress. 462 U.S. at 388, 103 S.Ct. at 2417, 76 L.Ed.2d at 664. The circumstances in *Bush* differ from those in the instant case. The Court, in *Bush*, obviously determined that the plaintiff's first amendment rights were adequately protected by the statutory (administrative) remedy. On the contrary, the Court has also determined that parallel remedies are necessary in order to combat instances of employment discrimination covered by Title VII. *See, e.g., Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). *But see Brown v. General Serv. Admin.,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (Title VII is exclusive remedy for federal employees).