**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ANTONIA J.H. ELKINS,
Plaintiff-Appellant,

v.

No. 00-1077

PHARMACY CORPORATION OF AMERICA;
KEITH ANDERSON,
Defendant-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
William M. Nickerson, District Judge.
(CA-98-2839-WMN)

Submitted: June 27, 2000

Decided: July 12, 2000

Before WIDENER, MURNAGHAN, and MOTZ,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Jason A. Kerpelman, Washington, D.C., for Appellant. Peter J. Sommer, Samuel J. Mangione, SOMMER & STEELE, L.L.C., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Antonia Elkins appeals the district court's order granting summary judgment to her former employer and supervisor and dismissing her employment discrimination action and associated state law claims. We affirm.

Elkins was employed as an I.V. Nurse Consultant by Defendant Pharmacy Corporation of America beginning on July 8, 1996. Elkins' job entailed developing instruction programs for nursing homes and permitted Elkins to do much of her work from home. Her job, however, required on-site visits to nursing homes in Maryland, Virginia and Washington, D.C., and thus Elkins traveled frequently.

On August 5, 1996, Elkins, a co-worker, and Elkins' supervisor, Defendant Keith Anderson, traveled to Richmond, Virginia for a conference. Anderson suggested they eat dinner at a"Hooters" restaurant. Elkins rejected the suggestion as inappropriate. She believes that, subsequent to this incident, Anderson treated her unfavorably.

Elkins alleges that over the next several weeks Anderson occasionally asked Elkins if she was having "babysitting problems," which Elkins believed was intended to intimidate her. On August 27, 1996, Anderson called her into the office for a meeting Elkins believed could have been conducted over the telephone, kept her waiting before the meeting, and answered both business and personal telephone calls during their meeting. On September 18, 1996, Anderson informed Elkins of a meeting later that evening, which Elkins contends should have been conveyed earlier to accommodate her babysitting arrangements.

On October 1, 1996, Anderson failed to inform Elkins that a meeting had been canceled. On October 7, 1996, Anderson rescheduled

2

Elkins ninety-day evaluation, first for later in the day and then for a different day.**1** On October 17, 1996, Anderson neglected to inform Elkins that some of her clients wanted a specific type of training program, which left her inadequately prepared to handle questions posed to her at a meeting that day. Finally, on October 18, 1996, Anderson told her that her travel time would no longer be counted as work time. Elkins resigned that day.

Elkins filed suit, alleging a hostile work environment, retaliation, constructive discharge, breach of contract, abusive discharge and tortious interference with a contract. The district court entered summary judgment for the Defendants, finding Elkins' evidence insufficient to create a genuine issue of material fact.

Elkins argues that the district court improperly engaged in fact-finding and incorrectly applied the relevant law. This court reviews de novo a district court's order granting summary judgment and views the facts in the light most favorable to the nonmoving party. See Scheduled Airlines Traffic Offices, Inc. v. Objective Inc., 180 F.3d 583, 590-91 (4th Cir. 1999). Summary judgment is appropriate unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

To state a claim for hostile work environment, a plaintiff must show that: (1) the harassment was unwelcome; (2) the harassment was based on her sex; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998). In order to determine whether the conduct alleged by Elkins was sufficiently severe or pervasive to bring it within Title VII's purview, the court examines the totality of the circumstances, including "[t]he frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993).

_____

**1** Anderson gave Elkins an above-average performance evaluation.

3

Construing the evidence in the light most favorable to Elkins, the district court correctly noted that the alleged sexual harassment amounted to a single remark that was neither severe nor threatening and did not interfere with Elkins' work performance. Thus, the district court properly dismissed Elkins' hostile environment claim.

To establish a prima facie case of retaliation, Elkins had to show that: (1) she engaged in protected activity; (2) her employer took adverse action against her; and (3) a sufficient causal connection existed between her protected activity and her employer's adverse action. See McNairn v. Sullivan, 929 F.2d 974, 980 (4th Cir. 1991). Thus, assuming Elkins' refusal of her supervisor's dinner suggestion was a protected activity, Elkins is only protected against discrimination with regard to ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating. See Page v. Bolger, 645 F.2d 227, 233 (4th Cir. 1981) (en banc).

Elkins claims that Anderson's actions in arranging meetings on short notice, keeping Elkins waiting before meeting with her, taking telephone calls during meetings with Elkins, and failing to inform her when meetings were canceled or rescheduled were adverse employment actions. The district court correctly held that Elkins' complaints are de minimus as none of the allegations separately or in the aggregate amount to ultimate employment decisions for which Title VII offers a remedy.

Elkins also argues that Anderson's statement that she could no longer count travel time as work time was an ultimate employment decision because it required her to work additional hours to receive the same salary. Elkins does not dispute that she was a salaried employee. Thus, even if Anderson made the alleged statement, Elkins' salary would have remained unchanged regardless of the number of hours she worked. Accordingly, the district court properly dismissed Elkins' retaliation claim.

Elkins' complaint also alleges a constructive discharge theory. "A constructive discharge occurs when an employer creates intolerable working conditions in a deliberate effort to force the employee to resign." Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994). Whether working conditions are intolerable is assessed by the objective stan-

4

dard of whether a reasonable person in the employee's position would have felt compelled to resign. See Munday v. Waste Management of N. Am. Inc., 126 F.3d 239, 244 (4th Cir. 1997), cert. denied, 522 U.S. 1116 (1998). The incidents alleged by Elkins did not objectively create sufficiently intolerable working conditions to force a reasonable person to resign.

Elkins next contends that she enjoyed a contractual relationship with her employer that placed her outside the realm of at-will employees and protected her from discharge for improper reasons. As discussed, however, Elkins was not discharged, even constructively, but rather resigned her position voluntarily. Moreover, in light of the evidence submitted by the parties, no reasonable juror could find that Elkins was anything more than an at-will employee. Accordingly, the district court properly granted summary judgment on Elkins' breach of contract claim.

Elkins also asserted a tort claim for abusive discharge. Under Maryland law, a tort action for wrongful discharge is not actionable if there is a statutory remedy available. See Parlato v. Abbott Labs., 850 F.2d 203, 206-07 (4th Cir. 1988); see also Makovi v. Sherwin-Williams Co., 561 A.2d 179, 190 (Md. 1989) (existence of state and federal statutory remedies for discriminatory discharge makes common law tort action for wrongful discharge unactionable). Pursuant to Md. Ann. Code art. 49B and Title VII, 42 U.S.C. § 2000e-2 (1994), a statutory remedy exists for employment discrimination. Therefore, the district court properly dismissed Elkins' claim of abusive discharge.

Finally, the district court properly granted summary judgment on Elkins' tortious interference claim. In order to state a cause of action for tortious interference with a business relationship, a plaintiff must allege more than mere malice; she must also allege that the defendant acted outside the scope of his employment without the intent to further the interests of the employer. See Miller v. Ratner, 114 Md. App. 18, 60-61 (1997); Bleich v. Florence Crittenton Servs. of Baltimore, Inc., 98 Md. App. 123, 146-47 (Md. App. 1993). Moreover, the tortfeasor's conduct must cause the plaintiff actual damage. See Bleich, 98 Md. App. at 146-47. While Elkins alleged that Anderson acted with malice, she utterly failed to allege that he acted outside the scope

5

of his authority or contrary to corporate interests. <u>See id.</u> at 148. Consistent with our conclusion that Elkins suffered no adverse action, we also find that she failed to present facts from which a reasonable jury could conclude that she suffered any actual damage. Accordingly, Elkins failed to state a claim for tortious interference with a business relationship under Maryland law.

We find no reversible error and affirm the order of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>